UNITED STATES, Appellee

v.

Willie K. ROYSTER, Captain
U.S. Air Force, Appellant.

No. 94–0243.
CMR No. 29875.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 16, 1995.

Decided Sept. 26, 1995.

For Appellant: *Captain Eric N. Eklund* (argued); *Colonel Jay L. Cohen, Lieutenant Colonel Frank L. Spinner, Captain Robert I. Smith* (on brief).

For Appellee: *Captain Jane L. Harless* (argued); *Colonel Jeffery T. Infelise* and *Major Jules D. Silberberg* (on brief); *Colonel Thomas E. Schlegel.*

*Opinion of the Court*

COX, Judge:

1. Appellant, a physician's assistant, was arraigned before a general court-martial for conduct unbecoming an officer (5 specifications)[1], in violation of Article 133, Uniform Code of Military Justice, 10 USC § 933. The specifications alleged that appellant made various sexual overtures to four of his female patients at Sheppard Hospital, Sheppard Air Force Base, Texas. The court members convicted appellant, contrary to his pleas, of four of the specifications, and sentenced him to be dismissed from the service.

2. In a unpublished opinion dated October 18, 1993, 1993 WL 431307, the Court of Military Review[2] found the evidence of two of these specifications to be insufficient, so it dismissed them. Unpub. op. at 4–6. That court was satisfied, however, that the remaining two specifications, which it affirmed, were "the most serious of the charges against" appellant and that his conduct "was fundamentally incompatible with his responsibilities as an Air Force Officer." Expressing "no doubt [that] the members would have imposed a dismissal based on these two specifications alone," the Court of Military Review therefore affirmed the sentence as adjudged. Unpub. op. at 10.

3. We granted review of the following issues having nothing to do with the substance of the offenses:

I

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY DENYING A REQUEST FOR DELAY, JOINED IN BY BOTH PARTIES, UNTIL A WITNESS WAS AVAILABLE.

II

WHETHER THE MILITARY JUDGE ERRED WHEN HE ALLOWED, OVER TIMELY OBJECTION, THE MEMBERS TO READ TRANSCRIPTS OF THE EARLIER PROCEEDINGS.

4. At the time of appellant's trial, one of the alleged victims, Airman Basic C, was unavailable. She had been a trainee at Sheppard AFB in February 1991, when the alleged incident involving her occurred. By the time of the initial session of the court-martial on October 10, 1991, she was in Europe on military assignment. Moreover, she was pregnant and within 2 weeks of her due date. A physician certified that she could not safely travel by air. Her deposition had previously been taken.

5. At trial, the defense moved to exclude the deposition on confrontation grounds. Initially, the defense conceded that it would be "reasonable relief" for the Government to proceed with the four specifications unrelated to Airman Basic C and then proceed on the remaining specification when she became available.

6. After a brief recess for the purpose of attempting to better project when the witness might become available, the Government moved to continue the entire court-martial until the missing witness was available. The Government indicated an adminis-

---

**1.** Eleven specifications were originally preferred, alleging offenses against ten different women, but four of these specifications were withdrawn prior to referral. Seven specifications were referred to the court-martial, alleging offenses against six different women, but two of these specifications were withdrawn prior to arraignment.

**2.** *See* 41 MJ 213, 229 n. * (1994).

trative concern that, during the recess, court members might be dispersed due to various military assignments or duties, and that, in any event, the Government was contemplating the preferral of additional charges which could then be joined with the existing charges.

7. At this point, the defense joined the Government in requesting a delay of the entire case until all witnesses were available, citing vaguely the expense of conducting part of the trial at that point and then "gearing up again for another trial" later. The judge offered to permit the defense to present as much of its case as it wanted "out of normal order," after the Government had presented its case on the four unaffected specifications. The defense declined the offer, however, and continued to argue for a deferral of the entire trial on the merits until all the witnesses were present.

8. The judge responded:

We will never get this trial done if we do that. I mean these charges are five months old. Witnesses are here from out of town. The Government has a couple of witnesses. Trial counsel is here from out of town. He has been preparing for this trial. Defense counsel has been here for this week from out of town and she [3] is prepared for this trial and we need to get this trial under way, otherwise, this trial will never get underway.

9. Ultimately, the judge announced that the trial would proceed as scheduled. During the balance of that day and for a portion of the next, the Government presented its evidence on the four unaffected specifications; and the defense cross-examined. Thereafter, the military judge "adjourned until 10:30, 12 November" 1991. Apparently, however, it took a bit longer to obtain Airman Basic C's presence, for the court-martial was not recalled to order until December 12, 1991, with the witness present. Over the next 2 days, the trial proceeded to completion.

■ 10. On appeal, appellant contends that the military judge erred in refusing to continue the entire case, pending the availability of Airman Basic C, and that appellant was prejudiced thereby. We disagree.

■ 11. The military judge determines the time for each session of the court-martial. RCM 801(a)(1), Manual for Courts–Martial, United States, 1984. The judge also rules on requests for continuances. RCM 906(b)(1). Article 40, UCMJ, 10 USC § 840, provides that the judge "*may*, for reasonable cause, grant a continuance to any party for such time, and as often, as may appear to be just." (Emphasis added.) The discussion following RCM 906(b)(1) urges further that judges "*should*, upon a showing of reasonable cause, grant a continuance to any party for as long and as often as is just." (Emphasis added.) As we have often noted, "Granting a continuance is within the discretion of the military judge, and a denial will be reversed only for an abuse of discretion." *United States v. Sharp*, 38 MJ 33, 37 (CMA 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1188, 127 L.Ed.2d 539 (1994).

■ 12. Here there was no abuse of discretion whatsoever. Indeed, given the circumstances he was confronting, the military judge made by far the most rational decision. We must review his decision on the basis of the information and circumstances then known to him. Had he continued the case until Airman Basic C became available, the chances were great that some other witness might become unavailable in the interim. Court members, military judges, and prosecutors are fungible; and procedures are readily available to compensate for their unavoidable absences during a trial. Witnesses, on the other hand, are not fungible. Their testimony (or other ephemeral evidence) is unique, and it cannot be replicated by just any capable individual.[4] Provided due process has otherwise been served, a

---

3. Obviously, the military judge was referring here to detailed military defense counsel, Captain Felicia Norwood. The record does not indicate the residence or commuting arrangements of civilian defense counsel, Mr. Robert Estrada.

4. Defense counsel, while not fungible due to the uniqueness of the attorney-client relationship, can still be substituted where necessary.

judge will rarely, if ever, abuse his or her discretion in receiving such evidence as is then and there available.

13. Appellant's interest in having the case unfold as a single block was neither greater nor lesser than the prosecution's or society's as a whole. While the 2–month hiatus in the court-martial was, in retrospect, less than desirable, it was hardly extraordinary. Owing to the world-wide mobility of servicemembers in conjunction with their military duties or various other exigencies, it frequently occurs that courts-martial cannot be completed in continuous session. Though there may be some outer limits as to how much of a hiatus could be tolerated, this one does not reach it. Like the Court of Military Review, we note that appellant "has alleged no specific prejudice resulting from the military judge's action, and we find none in the record." Unpub. op. at 8. The military judge's decision to recommence the court-martial also was not an abuse of discretion. This granted issue is without merit.

14. In the second issue, appellant challenges the military judge's actions upon resumption of the court-martial in December 1991. As noted, the hiatus lasted a month longer than the military judge had anticipated. The first matter he wanted to resolve, in a session under Article 39(a), UCMJ, 10 USC § 839(a), was "how we are going to go about refreshing the court member's [sic] recollection when we resume the trial." He proposed giving each court member a redacted record of trial to review, leaving out those matters not properly before them. A lengthy discussion ensued, during which the judge further explained his view:

> It has been two months. Now we have got to refresh their memory some way so we start with that. That is an absolute. Do you [civilian defense counsel] remember everything that was said? Of course not. You have to look at the record of trial the same as me. Before I came back into this trial, I could remember generally what happened two months ago, but to refresh my memory as to the issues that we had discussed and the testimony that was given, I had to reread the record of trial.

There has to be something to refresh their memory. We have to do something.

15. The defense strenuously disagreed, arguing against repetition of the prosecution witnesses' testimony. Alternatively, the defense requested a mistrial, so that a new panel could hear all of the witnesses at once. The military judge rejected their arguments, stating:

> Okay, I don't see any clear prejudice to the accused by a procedure like this. I have used it before. Other judges have used it before. It is unfortunate when you have a lapse in the trial of this length, but I don't see any prejudice to the accused that would accrue from refreshing the court members' memory as to what was said during the initial session. So I am going to deny the motion for a mistrial.

16. Forced to make a choice between providing the members an expurgated record of trial or having it read to them, the defense preferred the latter. Their theory was that, since the members had already *heard* the testimony, their perception of the government witnesses' testimony would be all the more enhanced by allowing them to also *read* it. The judge disagreed, observing:

> [W]ell, you might be able to get through 30 pages an hour. Say it took five hours and you want to sit here for five hours and have a reader read that....

17. Further, the judge was not persuaded by the defense theory that one form of recollection refreshment 2 months after the fact was more effective or prejudicial than the other, and he was satisfied that providing the members a transcript was "certainly far more efficient in that it saves the court more than a half day of unnecessary trial." Accordingly, he denied the motion for a mistrial and decided to provide the members with a "redacted ... record of trial with instructions."

18. When the court members were reseated, the judge first asked them, at the defense's behest, if they felt the "need to have ... [their] memory refreshed with regard to the testimony that was given in court two months ago." Each member responded

affirmatively. The judge then instructed them as follows:

> What I am going to do then is I am going to send you into the jury deliberation room and you can read the copies of the transcript to refresh your memory as to what testimony was given in court on the 10th and 11th of October. Now this is to refresh your memory, but it is not for extensive study or note taking and you are not to discuss the case among yourselves as you read through the testimony. Please don't mark on the transcripts. We will take them up from you when you are through with them. What I would like you to do is when you are through reviewing the trial transcript, the testimony that was given, I would like you to just give your copy of the transcript to the bailiff and then you are free to leave. What I would like you to do also is come back, we will allow you a couple of hours to review the transcript and then we will give you an hour for lunch, so what I would like to do is have you come back about one thirty this afternoon and then you are going to receive further evidence in the case....

The judge declined to instruct the members, as requested by the defense, that they must read the entire record. Instead, he allowed them to read what they wished.

19. Appellant's argument on appeal is similar to his argument below. In particular, he objects to the fact that the government witnesses' testimony was presented in "evidence twice, in different forms." Appellant again argues that it would have been "less prejudicial ... to have an impartial person read the transcripts to the members." Final Brief at 12. In addition, he argues that this procedure would have assured that the members reviewed all of the evidence, and not just the direct-examination testimony. Appellant further argues that RCM 921(b) compels this procedure. We read it differently.

20. As the Court of Military Review noted:

> Military judges have broad authority to regulate court-martial proceedings to promote the purposes of the UCMJ and the Manual for Courts–Martial. RCM 801.

The military judge controls the mode and order of interrogating witnesses and presenting evidence in order to reach the truth and avoid needless consumption of time. Mil.R.Evid. 611(a). The military judge in this case crafted a remedy tailored to the problem of fading recollection reported to him by the members. We find no abuse of discretion in his decision.

Unpub. op. at 9.

21. Appellant counters that the judge erred and that "RCM 921(b) gives the procedures to refresh the members' recollection." Final Brief at 12. Appellant misreads that rule. RCM 921 in general relates to **"Deliberations and voting on findings."** In particular, RCM 921(b) provides:

> (b) *Deliberations.* Deliberations properly include full and free discussion of the merits of the case. Unless otherwise directed by the military judge, members may take with them in deliberations their notes, if any, any exhibits admitted in evidence, and any written instructions. *Members may request that the court-martial be reopened and that portions of the record be read to them* or additional evidence introduced. The military judge may, in the exercise of discretion, grant such request.

(Emphasis added.)

■ 22. The deliberations phase of the court-martial has a very different purpose and function from the recollection-refreshment procedure improvised here. The members were still at a point in this trial in which they were charged to keep an open mind, to form no opinions, and not to discuss the case among themselves. Moreover, they were instructed that they were to use the record only "to refresh ... [their] memory, but ... not for extensive study or note taking." Finally, they were required to surrender the record as soon as they were finished reviewing it. In short, what occurred here was not only not analogous to, but was virtually the opposite of deliberations. *Cf. United States v. Austin,* 35 MJ 271 (CMA 1992), where a transcript of the victim's statement at the Article 32, UCMJ, 10 USC § 832, investigation which was admitted into evidence was taken by the members into deliberations;

and "the alleged victim at trial recanted...." Here, all the witnesses had testified before the members; and the transcript was used only to refresh their memories, but it was not taken into their deliberations. The rule in *Austin* does not apply here.

23. We agree with the Court of Military Review that the military judge's resourceful solution, born of necessity, was within his discretion. Moreover, it does not appear to have prejudiced appellant, who had the benefit of having his defense witnesses testify 2 months after the Government's case-in-chief and immediately before deliberations.

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD and GIERKE concur.

WISS, Judge (concurring in part and in the result):

24. I agree with the majority opinion's treatment of the first granted issue. Regarding the second, however, I do not agree. Instead, I believe that the military judge erred when he permitted the members to read for themselves a transcript of the prior proceedings in this trial.

25. With certain conditions not relevant here, Article 36(a), Uniform Code of Military Justice, 10 USC § 836(a), empowers the President to prescribe rules of practice and procedure and rules of evidence for courts-martial. The President has exercised that authority in several rules in the Manual for Courts–Martial, United States, 1984, that closely bear on this issue.

26. For instance, RCM 805(d)(1), Manual, *supra*, prescribes that, when a new member is detailed to a court-martial after testimony has been taken, the prior testimony "is read to the new member...." Regarding testimony different from the usual oral presentation of the witness in the courtroom, RCM 811(f) instructs that "a written stipulation of expected testimony shall be read to the members, if any, but shall not be presented to them...." In the same vein, the Discussion accompanying RCM 702(a) states: "A deposition which is transcribed is ordinarily read to the court-martial by the party offering it.... The transcript of a deposition may not be inspected by the members...."

27. Accordingly, it well may be, as the court below noted, that military judges have broad authority to regulate court-martial proceedings; that authority, however, is circumscribed to the extent that the President has prescribed procedures under his statutory authority to do so. While no Rule for Courts–Martial specifically addresses the unusual situation presented here of 2 months' passage between sessions that requires a refresher of the prior testimony, I believe that the President clearly has reflected his decision that testimonial evidence will be *heard* by the members and never *read* by them, much less both. *See* also RCM 913(c)(2) ("The testimony of witnesses shall be taken orally in open session, unless otherwise provided in this Manual."); RCM 921(b) (During deliberations, "[m]embers may request that the court-martial be reopened and that portions of the record be read to them or additional evidence introduced...."). *See generally United States v. Austin*, 35 MJ 271 (CMA 1992) (error to permit members to take into deliberation room a transcript of victim's prior testimony at Article 32, UCMJ, 10 USC § 832, session, admitted into evidence at trial as a prior inconsistent statement under Mil.R.Evid. 801(d)(1)(A), Manual, *supra*, and as former testimony under Mil.R.Evid. 804(b)(1)).

28. I join the majority's affirmance of the decision below, however, because I am satisfied that this error did not prejudice appellant's interests. Appellant argues that he was disadvantaged compared to the prosecution by having the latter's evidence heard (albeit 2 months earlier) *and* read by the members, and I am not insensitive to the logic of that argument. Here, however, I do not find it persuasive.

29. The members read the earlier testimony prior to hearing the defense case-in-chief and did not have the written transcript available to them for study and dissection in the deliberation room itself. *Cf. United States v. Austin, supra* at 277 (prejudice found, in part, because defense evidence was

not "before the members in such detailed and favored form during their deliberations."). Also, the defense evidence was received more recently and, thus, was at least as fresh in their minds as was the written refresher of the prosecution's evidence, which is unlike a situation in which written testimony is taken into the deliberation room. In this context, I am convinced that the prosecution's evidence was not in a "favored form" compared to the defense evidence. *Cf. id.*