UNITED STATES, Appellee,

v.

John A. WEISBECK, Chief Warrant
Officer Two, U.S. Army,
Appellant.

No. 98–0646.
Crim.App. No. 9502215.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 17, 1998.

Decided June 30, 1999.

Sullivan, J., filed concurring opinion.

Crawford, J., filed dissenting opinion.

GIERKE, J., delivered the opinion of the Court, in which COX, C.J., and SULLIVAN and EFFRON, JJ., joined. SULLIVAN, J., filed a concurring opinion. CRAWFORD, J., filed a dissenting opinion.

For Appellant: *Richard T. McNeil* (argued); *Mary Ramsay McCormick* (on brief); *Captain Thomas Jay Barrett.*

For Appellee: *Major Lyle D. Jentzer* (argued); *Lieutenant Colonel Eugene R. Milhizer* (on brief).

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of taking indecent acts or liberties with a child (2 specifications), indecent assault (2 specifications), committing indecent acts (1 specification), and communicating indecent language to a child (3 specifications), all in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The court-martial sentenced appellant to a dishonorable discharge, confinement for 25 years, and total forfeitures. The convening authority reduced the confinement to 10 years, but otherwise approved the sentence. For various reasons, the Court of Criminal Appeals set aside the guilty findings of five of seven specifications, dismissed those specifications, and affirmed the sentence except for reducing the confinement to 6 years. 48 MJ 570, 577–78.

This Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED IN LIMITING APPELLANT'S CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE BY DENYING A CONTINUANCE TO PROVIDE, AT NO COST TO THE GOVERNMENT, FOR THE APPEARANCE OF AN EXPERT WITNESS AND, ADDITIONALLY, TO ENABLE THAT EXPERT TO ASSIST IN THE PREPARATION OF THE DEFENSE CASE.

For the reasons set out below, we reverse.

## Factual Background

In April 1994, appellant was tried by a general court-martial at Fort Devens, Massachusetts, for sexually assaulting two teen-aged brothers, and he was acquitted. Appellant was represented by a civilian, Michael J. Coughlin, at the Fort Devens court-martial. The thrust of the defense in the Fort Devens court-martial was that the two alleged victims had fabricated the accusations to get attention and better treatment at the hospital where they were undergoing psychiatric treatment. Dr. Edwin J. Mikkelsen, an associate professor in the Department of Psychiatry at the Harvard Medical School, testified for the defense at the Fort Devens court-martial "as an expert in false sexual abuse allegations by adolescents." 48 MJ at 573.

In July 1995, at Fort Rucker, Alabama, appellant was charged with the offenses outlined above. Like the Fort Devens case, the alleged victims were two adolescent boys.

At a docketing session on September 14, 1995, the Fort Rucker case was scheduled for trial on either October 4 or October 12, with an Article 39(a), UCMJ, 10 USC § 839(a), session scheduled for October 3. On September 22, the defense filed a motion *in limine* to preclude admission of "any evidence, testimony, or other methods of presentment" from the Fort Devens court-martial. The Government opposed the motion *in limine* and indicated its intent to present the testimony of the two boys involved in the Fort Devens court-martial (hereinafter referred to as the "Devens boys"). The Government asserted that the testimony of the Devens boys was admissible under Mil.R.Evid. 404(b), Manual for Courts–Martial, United States (1995 ed.),* to show a common "modus operandi of preying on nontraditional families consisting of two young brothers ... whose biological parents have divorced[, and] whose mother has remarried, causing resentment by the two young brothers against their stepfather."

On September 25, the detailed defense counsel requested a continuance until October 12, and the military judge granted it. At the Article 39(a) session on October 3, the military judge said that he was "inclined to admit the testimony" of the Devens boys,

---

* All Manual provisions are cited to the version in effect at the time of trial. The 1998 version is unchanged, unless otherwise indicated.

although he would not permit them to mention the Fort Devens court-martial. At this point, the defense requested another continuance until November 16, to prepare to meet the testimony of the Devens boys. Defense counsel argued that the military judge's ruling "forced [him] to litigate two courts-martial." The military judge denied his request.

After the Article 39(a) session on October 3, appellant retained Mr. Coughlin, who had represented him in the Fort Devens court-martial. The military judge was notified of Mr. Coughlin's entry of appearance at some time before October 12, the scheduled trial date. He rescheduled the trial for November 29, 1995. 48 MJ at 573.

On November 20, at a telephonic RCM 802, Manual, *supra,* conference, Mr. Coughlin requested an additional continuance to arrange for the testimony of Dr. Mikkelsen. 48 MJ at 573. The military judge denied the request, indicating that Mr. Coughlin "had sufficient time to procure either the presence of the witness or to secure the witness' testimony through alternate means."

Before the court-martial convened on November 29, Mr. Coughlin filed a written request for a continuance, setting out Dr. Mikkelsen's qualifications and describing his involvement in the Fort Devens court-martial. The written request also recited that Mr. Coughlin contacted Dr. Mikkelsen "upon entry of appearance"; that Dr. Mikkelsen requested updated counseling records on the Devens boys to update his analysis of the case; that the defense requested the records on October 20; and that only partial records were supplied, less than a week before the scheduled trial date of November 29. The written request concludes with the following:

The defense wishes to utilize Dr. Mikkelson [sic] to independently examine the victims, their records and statements, to ascertain whether the boys [sic] actions and behavior may instead constitute or be consistent with that of false allegations. Dr. Mikkelson [sic] is unavailable during the week of November 28th, and the defense requests the matter be continued to January 10th, 11th and 12th, 1996 to allow his attendance.

Regarding "alternate means," Mr. Coughlin informed the military judge at trial that there was no verbatim transcript of Dr. Mikkelsen's prior testimony because the court-martial resulted in an acquittal. Trial counsel informed the military judge that the Government had offered to arrange a video teleconference, but Dr. Mikkelsen was unable to participate. 48 MJ at 573. In opposing the continuance, trial counsel asserted that civilian defense counsel lives in or near Boston, where Dr. Mikkelsen teaches and practices, but that he made no effort to contact Dr. Mikkelsen until shortly before the RCM 802 session on November 20. Trial counsel argued that they have "been on notice of what it was they had to do and what evidence it was that they were going to face since July, but they didn't take any steps until maybe two weeks ago to try and compel or try and obtain the presence of Doctor Michelson [sic]." The record does not reflect any request for production of the witness submitted in accordance with RCM 703(c)(2). 48 MJ at 573. Trial counsel did not assert that a continuance would in any way be detrimental to the prosecution. The military judge denied the request for a continuance.

The prosecution case rested primarily on the testimony of the Rucker boys and the Devens boys. When the military judge denied the defense motion *in limine,* he noted that "the record of trial in the previous case is, in fact, the defense's defense"; and he opined that, "while the defense has objected to it, it is clear that it is in their interest to have this admitted."

The theory of the defense was that BT, the older of the Rucker boys, broke into appellant's house, looked at his pornographic magazines, drank his beer, and rummaged through his personal papers, where he found documents and newspaper accounts pertaining to appellant's previous court-martial at Fort Devens. The defense theory was that the Rucker boys used this discovery to fabricate accusations similar to the Devens accusations to extort money from appellant.

The Rucker boys initially accused appellant of committing several of the offenses in February 1994. After the defense served the Government with notice of intent to present an alibi, the Government conceded that, in February, appellant was in Massachusetts and one of the Rucker boys was in Florida. Over defense objection, three specifications were amended to allege that the offenses were committed between May 1 and November 30, 1994. One of these specifications, specification 2 of the Charge, is one of the two offenses affirmed by the court below.

At trial, the defense argued that the Rucker boys, confronted with appellant's ironclad alibi, changed their story to allege that the acts occurred later, after appellant moved to Fort Rucker. The defense also argued that the accusations of the Rucker boys were too similar to the accusations of the Devens boys to be credible.

*Discussion*

Appellant contends that the military judge abused his discretion and deprived him of his right to call a witness and his right to expert assistance in the preparation of his defense. The Government argues that the military judge did not abuse his discretion because appellant failed to show how the expert testimony was necessary and relevant to the defense.

Article 40, UCMJ, 10 USC § 840, provides: "The military judge ... may, for reasonable cause, grant a continuance to any party for such time, and as often, as may appear to be just." RCM 801(a)(1) empowers the military judge to set the time for each session of a court-martial. RCM 906(b)(1) provides: "A continuance may be granted only by the military judge." The non-binding Discussion of RCM 906(b)(1) explains: "Reasons for a continuance may include: insufficient opportunity to prepare for trial; unavailability of an essential witness; [and] the interest of Government in the order of trial of related cases...."

■ The standard of review of a military judge's decision to deny a continuance is abuse of discretion. There is an abuse of discretion "where 'reasons or rulings of the' military judge are 'clearly untenable and ...

deprive a party of a substantial right such as to amount to a denial of justice'; it 'does not imply an improper motive, willful purpose, or intentional wrong.'" *United States v. Miller*, 47 MJ 352, 358 (1997) (citations omitted).

■ The factors applied to determine whether there was an abuse of discretion include:

[S]urprise, nature of any evidence involved, timeliness of the request, substitute testimony or evidence, availability of witness or evidence requested, length of continuance, prejudice to opponent, moving party received prior continuances, good faith of moving party, use of reasonable diligence by moving party, possible impact on verdict, and prior notice.

*Id.*, quoting F. Gilligan and F. Lederer, *Court–Martial Procedure* § 18–32.00 at 704 (1991).

RCM 703(a) implements the right of the prosecution and defense to "equal opportunity to obtain witnesses and evidence, including the benefit of compulsory process." RCM 703(c)(2) requires the defense to "submit to the trial counsel a written list of witnesses whose production by the Government the defense requests." RCM 703(d) prescribes the procedure for employment of experts at government expense.

■ Applying the *Miller* factors to this case, we conclude as follows:

1. *Surprise.* There was no surprise in this case. When the military judge announced on October 3 that he was "inclined to admit the testimony" of the Devens boys, the military defense counsel immediately requested a continuance to prepare to counter the testimony. On November 20, at the telephonic RCM 802 conference, Mr. Coughlin requested a continuance to arrange for the testimony of Dr. Mikkelsen. Before the court-martial convened on November 29, Mr. Coughlin filed a written motion for a continuance, along with a supporting memorandum.

2. *Nature of the Evidence.* Dr. Mikkelsen was the heart of the intended defense strategy. Ordinarily, when the defense requests expert assistance at government ex-

pense, they are not entitled to an expert of their own choosing, especially where the Government offers a qualified substitute. *See United States v. Burnette,* 29 MJ 473 (CMA), *cert. denied,* 498 U.S. 821, 111 S.Ct. 70, 112 L.Ed.2d 43 (1990). In this case, the defense was not requesting that the Government produce and pay for the expert. They were asking to use the same expert they had successfully used in the Fort Devens court-martial to discredit the same two witnesses who were scheduled to testify again in the Fort Rucker court-martial. *See United States v. Royster,* 42 MJ 488, 490 (1995) (witnesses "are not fungible"). In addition, the defense wanted to have Dr. Mikkelsen examine the Rucker boys for evidence consistent with manipulated or contrived testimony. The entire thrust of the defense was to use Dr. Mikkelsen to again discredit the testimony of the Devens boys and, if the evidence warranted, discredit the testimony of the Rucker boys. The Government did not offer a substitute, but instead argued that Dr. Mikkelsen's personal testimony was unnecessary.

3. *Timeliness.* Individual civilian counsel requested the continuance on November 20, 9 days before the scheduled trial date.

4. *Substitute Testimony or Evidence.* There was no available substitute. There was no verbatim transcript of the Fort Devens court-martial, because it resulted in an acquittal. *See* RCM 1103(b)(2)(B) and (C). There was no possible substitute for Dr. Mikkelsen's evaluation of the Rucker boys, because the defense was *not given time to* have Dr. Mikkelsen evaluate them. *See United States v. Vanderwier,* 25 MJ 263, 267 (CMA 1987) (military judge abused discretion where "record provides no explanation" why trial could not have been delayed to allow personal testimony instead of deposition); *United States v. Cokeley,* 22 MJ 225, 229–30 (CMA 1986) (military judge abused discretion by admitting deposition instead of continuing case until witness was medically able to travel and testify).

5. *Availability of Witness.* There is no factual dispute that the witness would have been available if the continuance had been granted.

6. *Length of Continuance.* The requested continuance was for less than 6 weeks.

7. *Prejudice to Opponent.* The Government did not assert any prejudice arising from a continuance. *Cf. Royster,* 42 MJ at 490 (no abuse of discretion to deny continuance where testimony of other witnesses might be lost); *United States v. Sharp,* 38 MJ 33, 38 (CMA 1993) (no abuse of discretion to deny continuance where further delay could result in unavailability of witnesses), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1188, 127 L.Ed.2d 539 (1994).

8. *Prior Continuances.* The defense had received two continuances, the first requested by detailed defense counsel and the second by individual military counsel.

9. *Good Faith of Moving Party.* There has been no challenge to Mr. Coughlin's good faith in asking for the continuance.

10. *Reasonable Diligence by Moving Party.* The record shows reasonable diligence. The uncontested facts show that Mr. Coughlin entered his appearance in early October. His motions recited, without contradiction by the Government, that he contacted Dr. Mikkelsen "upon entry of appearance." Mr. Coughlin also asserted, without contradiction, that he requested records pertaining to the Devens boys, that only partial records were supplied, and that the records were produced less than a week before the scheduled trial date.

11. *Possible Impact on the Verdict.* Dr. Mikkelsen was a key witness in the Fort Devens court-martial, where appellant was acquitted. Without him, the defense had no expert testimony to attack the credibility of the Devens boys or the Rucker boys.

12. *Prior Notice.* The military judge informed Mr. Coughlin on November 20 that the trial would proceed on November 29, with or without Dr. Mikkelsen. This was insufficient time to find another expert, give the expert time to study the records of the Devens boys, and examine the Rucker boys.

The only justification for denying the continuance was expeditious processing. Be-

cause the Fort Rucker court-martial was a replay of the Fort Devens court-martial, the defense wanted the same expert witness to attack the credibility of the Rucker boys and the Devens boys in the same way that he had successfully done so in the Fort Devens court-martial. The military judge recognized the importance of the Fort Devens court-martial when he denied the motion to exclude the Devens' boys testimony and observed that "the record of trial in the previous case is, in fact, the defense's defense." The record reflects no justification for denying the continuance other than holding the defense's feet to the fire. "[U]nreasonable and arbitrary insistence upon expeditiousness in the face of justifiable request for delay" is an abuse of discretion. *United States v. Soldevila–Lopez,* 17 F.3d 480, 487 (1st Cir.1994). We hold that the military judge abused his discretion by denying the defense request for a continuance.

### Decision

The decision of the United States Army Court of Criminal Appeals is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

SULLIVAN, Judge (concurring):

A key witness was left out of the defense case here. In ruling on the continuance request, the judge seemed to be more concerned with delay and his perceived lateness of the request than the substance of the motion. Speed in the trial process has its place but fairness and justice are far more important factors. I am reminded of an old judicial rhyme:

> The hungry judges soon the sentence sign,
> and wretches hang that jurymen may dine.[*]

I join in this just reversal.

CRAWFORD, Judge (dissenting):

I dissent because the majority conducts a flawed abuse-of-discretion analysis and fails to analyze this case based on harmless error.

---

* Alexander Pope, *The Rape of the Lock,* canto III, line 21 (1712).

### FACTS

The first alleged offense involving the victims, herein referred to as the Rucker boys, occurred in February 1994, and the second offense in June 1995. On July 13, 1995, charges were preferred against appellant. At that time, the defense became involved in the Article 32, UCMJ, 10 USC § 832, investigation which was completed on August 10, 1995.

On September 14, 1995, the judge docketed the case to be tried beginning on October 4, 1995. Some time prior to September 25, the Government informed the defense that it intended to present the live testimony of two boys, herein referred to as the Devens boys, who had testified regarding sexual-abuse allegations at a previous court-martial at Fort Devens at which appellant was acquitted.

During the arraignment on October 3, 1995, trial defense counsel requested a further delay until November 16, 1995. The judge denied this request and on defense counsel's request for reconsideration, he continued the trial until October 12, 1995. The judge also deferred ruling on the defense request to exclude the Devens boys' testimony under Mil.R.Evid. 404(b). Later, during the trial, the judge apparently ruled that the Devens boys could testify without first judging their credibility.

Shortly before October 12, appellant hired a civilian defense counsel, Michael J. Coughlin, who had been his defense counsel at the Fort Devens trial. Based on Mr. Coughlin's request, the judge granted a continuance until November 29 to accommodate civilian defense counsel's schedule. On November 20, 1995, the judge held a telephonic RCM 802 session with counsel, at which time the defense requested a continuance to secure the assistance and testimony of "an expert in false sexual abuse allegations," Dr. Edwin Mikkelsen. Dr. Mikkelsen would be procured at no expense to the Government.

Dr. Mikkelsen provided critical testimony for the defense at the Fort Devens court-martial. The defense here indicated that

they "wish[ed] to utilize Dr. Mikkels[e]n to independantly [sic] examine the [Rucker] victims, their records and statements, to ascertain whether the boys [sic] actions and behavior may instead constitute or be consistent with that of false allegations." The defense wanted a delay for an indefinite period, at least until January 10, 1996. Both the civilian defense counsel and the expert lived near each other, but civilian counsel had apparently not contacted the expert prior to requesting the continuance. The defense had been on notice since early July 1995 of the Government's theory of the case.

The Government agreed to procure the expert's testimony through alternate means, such as video-teleconference or a deposition. The defense suggests that the judge was reluctant to grant any continuance other than the first requested to accommodate civilian defense counsel's initial appearance.

The defense proffered that Dr. Mikkelsen's testimony and assistance was necessary for several reasons:

1. to aid the military judge and the members in assessing the credibility of the [Devens] boys whom the government intended to call to testify to prior bad acts allegedly committed by appellant but for which appellant was acquitted, in large part due to the testimony of Dr. Mikkelsen;

2. to provide the basis for cross-examination of the [Devens] boys on the concept of "transferred abuse," the questioning of which was challenged by the Government in the absence of expert testimony, such as Dr. Mikkelsen's, to explain the theory to the members;

3. to provide expert assistance to evaluate whether the [Rucker] boys' allegations were a product of psychological manipulation, to prepare cross-examination questions to impeach the [Rucker boys,] and to provide expert testimony on the nature and causes of false sexual abuse reporting; and

4. to provide expert assistance and testimony to rebut the child sexual abuse

expert listed by the Government as a sentencing witness.

Final Brief at 6–7 (footnote omitted).

The judge denied this request.

The court below held, first, that Dr. Mikkelsen's unavailability could have been prevented by the defense. Second, it rejected the defense's transference theory since, contrary to the Devens brothers' situation, there was no evidence that the stepfather of the Rucker boys had physically abused them. Third, the court found that the doctor's opinion as to the credibility of the Rucker boys would not be admissible as it made him the functional equivalent of a "human lie detector." 48 MJ at 575.

## DISCUSSION

Given the proffer by the defense, the judge did not abuse his discretion. Certainly, the defense expert could not testify as to the credibility of the Rucker boys. *See, e.g., United States v. Birdsall,* 47 MJ 404, 406 (1998). Furthermore, the judge could not compel these boys to undergo psychiatric or physical examination by a defense expert. *United States v. Owen,* 24 MJ 390, 395 (CMA 1987). There is no hint in this case that they would cooperate voluntarily or were even asked to undergo such examinations.

As to the second proffer regarding the transference theory, that would not be relevant because there is no evidence that the stepfather of the brothers had physically abused them. In any event, that would not be reliable evidence. Francis A. Gilligan, Edward J. Imwinkelried & Elizabeth F. Loftus, *The Theory of "Unconscious Transference": The Latest Threat to the Shield Laws Protecting the Privacy of Victims of Sex Offenses,* 38 B.C. L.Rev. 107 (1996).

As to the third proffer the information is not sufficient even to indicate how the expert would be employed.

As to the last proffer, this would be covered by the Government's offers of an alternative expert in the local area to assist the defense or to provide alternative means for Dr. Mikkelsen to participate.

Courts have broad discretion on questions of continuances, and their decisions will not be disturbed absent clear abuse of that discretion. *Morris v. Slappy,* 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983); *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964). The defense became involved in this case in July 1995. Mr. Coughlin was hired in early October 1995, had received one continuance, and then sought another continuance for an indefinite period. Given the proffers made by the defense, the Government offered reasonable alternatives to accommodate the defense. Appellate review of whether a judge has abused his discretion in denying a continuance requires a balancing analysis, weighing the public's right to prompt and efficient justice against an appellant's right to present his defense. "The public has a strong interest in the prompt, effective, and efficient administration of justice; the public's interest in the dispensation of justice that is not unreasonably delayed has great force." *United States v. Burton,* 584 F.2d 485, 489 (D.C.Cir.1978).

Clearly, the judge did not abuse his discretion in denying the continuance under these circumstances.

The majority does not apply a harmless-error test as required by Article 59(a), UCMJ, 10 USC § 859(a). Here, the defense theory of the case was that the Rucker boys, or at least the older Rucker boy, had unlawfully obtained information about appellant's prior court-martial and was seeking to blackmail him for $60. There is little evidence to support this theory. In fact, as the defense asserted, there was no verbatim record of trial from the first court-martial: probably only a skeletal record exists because of appellant's acquittal. No record of trial or other documents from Fort Devens were ever produced at trial to show the potential for an alleged blackmail, even though such would be in the possession of appellant.

Because of the majority's failure to analyze properly the facts in the case and apply the harmless-error test, I dissent.