SULLIVAN, Judge
(dissenting):
The majority sets aside the Court of Criminal Appeals’ decision in appellant’s ease which affirmed his conviction for murder and a life sentence. It does so on the basis that the judge abused her discretion in denying appellant’s request for expert assistance from Doctor Blake and denying his request for a continuance and a retest of a DNA sample. The majority (55 MJ at 276) concludes that the judge acted “arbitrarily” in denying these motions because she “focus[ed] on holding the defense’s feet to the fire” for “requesting an expert who was either unable or unwilling to provide” tools to challenge the Government’s DNA evidence. See generally United States v. Weisbeck, 50 MJ 461, 466 (1999). I dissent.
The premise of the majority opinion is flawed and, accordingly, I cannot join its conclusion. In my view, the military judge was “focused” on the defense’s burden to show its requests for government assistance were necessary for a fair trial as required by our case law. See United States v. Kelly, 39 MJ 235 (CMA), cert. denied, 513 U.S. 931, 115 S.Ct. 324, 130 L.Ed.2d 284 (1994). The military judge stated in this regard:
IWjhen the defense makes a request to the convening authority for an expert by name and the convening authority grants it, then the convening authority can rely that the defense has done its homework and has determined that this defense expert possesses the requisite qualifications at that time. It was stated that Doctor Conneally could provide assistance to the defense in this case and now you’re telling me he’s not even a forensic scientist. Well I guess he teaches DNA analysis, it still appears to me that one who teaches DNA analysis could review the evidence in this case and give a helpful opinion, but there’s still nothing in here showing why Doctor Blake is necessary in this case.
R. 483 (emphasis added).
Previously, the judge denied a defense request for retesting appellant’s blood sample, relying on cases from our Court which require a necessity approach to these requests as well. She ruled:
There’s nothing that has been raised by the defense in this motion to show anything [more] than the mere possibility of something being discovered should there be retesting. In other words, what I’m saying in a roundabout fashion, is that the standards that I must employ in — let me see, I’ve got — I guess I should put the cases on the record, in United States v. Gonzalez, 39 MJ 459; United States v. Kelly, 39 MJ 235; United States v. Garries, 22 MJ 288; United States v. Mosley, 42 MJ 300, which applies the Supreme Court standards in expert assistance provided by the Government for the defense case. But those standards have not been met in this motion and the convening authority applied the right standards when he was reviewing under RCM 703.
She later said on this same request:
I’ll make a finding here that Special Agent Forringer testified that he took custody of Specialist McAllister’s vial of blood after watching it been [sic] draw [sic] and watching the vial. Special Agent Benavidez testified that he took custody of the Jones’ vial; he saw it being labeled; and he [had] custody and control over that vial. The two vials were transported by different agents in different vehicles, stored in different locations. The chain of custody has already been litigated at the prior Article 39(a) session. Maybe all of the labeling *284 was not 100% perfect but that’s not what a chain of custody requires. There is no showing of a likelihood or a true possibility of mix-up of those samples. On the vial of Specialist McAllister, the chain of custody had the name McLasiter, that is where Mr. Overson called to verify the name of the individual to verify that the correct sample was about to be tested. And I find that he did verify the identity of the individual who had actually donated that particular sample. So, there is nothing to suggest to me that there is any real possibility of a mix-up of samples within the chain of custody procedures. So, that does not support a retest and neither does — at government expense, neither does the possibility of contamination in a lab just because of the difficulty in avoiding contamination in that setting when there is no real showing of a true possibility of contamination in that particular lab doing these particular tests. That does not say that the defense cannot, at its own expense, have a retest, provided it can be accomplished by the day of trial in this case. Or cannot cross-examine the witness on the inherent validity of DNA analysis because of the complexities of maintaining a contamination free environment. Those will be matters for the members to determine or to weigh in weighing the value of that evidence in their own minds. But I am denying the defense motion to compel the Government to pay for a retest and to grant a continuance until such time as that should be done. There’s just not a sufficient showing in this case to compel the Government to do it.
R. 446-47 (emphasis added).
The Court of Criminal Appeals also affirmed appellant’s conviction. It said:
As to the second DNA expert request, we apply the same standard, that is, appellant must meet his burden of demonstrating the necessity for Dr. Blake’s services. In approving the defense request for Dr. Conneally, the convening authority gave the defense more than they were entitled to receive, i.e., a specifically named expert consultant. Dr. Conneally’s curriculum vitae established him as an eminently qualified expert with over thirty years experience in medical genetics culminating in his current position as the Distinguished Professor of Medical Genetics and Neurology, Indiana University School of Medicine. His appointment to the defense team gave the appellant more than “the ‘basic tools’ necessary to present his defense.” Kelly, 39 MJ at 237 (citing Ake, 470 U.S. at 77, 105 S.Ct. 1087). Appellant failed to advance any plausible reason why Dr. Con-neally could not provide the necessary expert assistance. The request for Dr. Blake to be substituted for Dr Conneally was not based on any inability on Dr. Conneally’s part to provide the necessary assistance. It was instead a thinly veiled attempt to get the re-test that had been denied by the military judge. Indeed, as noted by the convening authority in his denial of the requested substitution, the request for Dr. Blake was identical in nineteen of twenty-one paragraphs to the request for the retest that had been denied. As the defense failed to demonstrate any reasonable necessity, ' the military judge did not abuse her discretion in denying the defense request to substitute Dr. Blake for Dr. Con-neally.
As to the defense request for a re-test of the DNA specimen, we again apply the Garries reasonable necessity standard, that is the defense “must demonstrate something more than a mere possibility of assistance” from a re-test. See Robinson, 39 MJ at 89. The defense request was based on (1) a possible mix-up of appellant’s blood specimen with that of SSG Jones, and (2) possible contamination of the fingernail specimen either at the crime scene or at the laboratory. We find the possibility of a mix-up of the blood specimens to be so infinitesimal as to be nonexistent. The only “defect” that appellant could point to was the slight misspelling of his name on the DA Form 4317. That “defect” was adequately explained by SA Forringer and is so de minimis as to have absolutely no effect on the chain of custody. As to the possible contamination, the defense failed to produce even a scintilla of *285 evidence of any contamination. The defense merely asked speculative questions of[,] if someone sneezed or coughed on the decedent’s fingernails!,] could that have contaminated the specimen. That is a far cry from producing any evidence that any person did cough or sneeze on the decedent’s fingernails. The defense’s conelu-sional assertion, that there may have been contamination because DNA testing is by its nature sensitive, was unsupported by any evidence. In addition to failing to identify any defect in the chain of custody or any contamination of the sample, the defense failed to identify any laboratory error, any misconduct or negligence by any laboratory personnel, or any misinterpretation of the test results. Unlike the drug test in United States v. Mosley, 42 MJ 300 (1995), the DNA retest in the instant case would not have been minimal in terms of time and resources. We find that the military judge did not abuse her discretion in denying the defense request for a re-test of the DNA specimen.
Unpub. op. at 10-11 (first emphasis added; footnote omitted).
In sum, the majority’s narrow view of the basis for the military judge’s rulings in this case dictates the result it reaches on this appeal. See United States v. Weisbeck, 50 MJ at 466. While I agree with the Weisbeck decision, I do not agree it is applicable in this case. Moreover, the evidence in this case is more than sufficient under the test of Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Accordingly, I dissent to the majority effectively reversing a jury conviction of murder on the slender reed which mistakes this case for the real injustice suffered in Weisbeck. There was no injustice in this trial and the conviction should be affirmed.