**UNITED STATES, Appellee,**

v.

**Erick R. GONZALEZ, Private, U.S. Army, Appellant.**

No. 44,511.

SPCM 16913.

U.S. Court of Military Appeals.

Nov. 7, 1983.

For Appellant: *Colonel William G. Eckhardt, Lieutenant Colonel R. Rex Brookshire II, Major Patrick F. Crow, Captain Claudio F. Gnocchi* (on brief); *Captain David M. England* and *Captain Paul J. Moriarty.*

For Appellee: *Lieutenant Colonel John T. Edwards, Captain Patrick M. Flachs, Captain John L. Plotkin* (on brief); *Colonel R.R. Boller.*

*Opinion of the Court*

PER CURIAM:

Contrary to his pleas, a special court-martial consisting of a military judge alone found that, among other things, appellant had "wrongfully communicate[d] to Sergeant First Class Kenneth Hill, a threat to kill him." [1] Gonzalez questions whether the military judge erred in ruling that the defense at trial could not present certain extrinsic evidence of Sergeant Hill's alleged bias. 15 M.J. 59 (1982). On the evidence in the record before us, appellant's position is without merit.

---

1. Appellant was charged with wrongfully damaging the windshield and seat of a private automobile owned by Sergeant David Hassell; wrongfully communicating a threat to Sergeant Hassell and to Sergeant First Class Kenneth Hill; and wrongfully possessing 5 grams of marihuana, in violation of Articles 109 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 909 and 934, respectively. After the parties stipulated that Sergeant Hassell could be expected to testify that he regarded appellant's "threat" to him as mere puffery, appellant was acquitted of the threat against Hassell; but he was convicted of the other offenses with some minor modifications. He was sentenced to a bad-conduct discharge, confinement for 3 months, and forfeiture of $200 pay per month for 6 months. The convening authority approved the trial results, and the Court of Military Review affirmed in a memorandum opinion.

SFC Hill had been a government witness at a prior court-martial of appellant for offenses involving disrespect and disobedience. At that trial, appellant had pursued a divestiture-of-office defense: He had contended that Hill and other non-commissioned officers had strapped him to a chair and thereby had abandoned any right to his respect and obedience. Contrariwise, Hill had testified that, while he was present, appellant had not been strapped to the chair at all. Instead, when Gonzalez had been threatened with being strapped for his own safety in order to prevent self-destructive actions, he had voluntarily calmed himself.

At the trial of the case at bar, appellant sought to call four witnesses—purportedly to establish that Hill had testified falsely at the previous court-martial that appellant had not been strapped to a chair. The defense theory was that Hill's lies at the earlier court-martial manifested a personal dislike of appellant and bias against him which made it likely that the witness would again perjure himself at this trial.

Because he was not fully satisfied as to the defense counsel's theory of bias and the contents of the testimony which the defense sought to introduce, the judge held an Article 39(a)[2] session at which all four potential defense witnesses appeared. Sergeant Lavin testified that appellant had, indeed, been tied to a chair on the occasion in question, but this witness "never took note whether ... [Hill] was there or not." Then, Lavin was asked, "If Sergeant Hill were to testify here under oath and say, 'I didn't strap him down, see him strapped down, or help strap him down or have anything to do with strapping him down,' would you be able to say that he was telling the truth, lying, or anything?" Lavin replied, "I wouldn't be able to, sir." In response to a follow-up question whether in his opinion Hill would be "telling the truth" if he so testified, Lavin stated: "I wouldn't be able to tell. I don't know."

The second potential defense witness, Sergeant Ivey, testified similarly. He, too,

indicated that, although appellant had been strapped in a chair, he did not see SFC Hill in the vicinity at that time. When asked if he would be able to say whether the substance of Hill's anticipated testimony was true or false, Ivey answered, "I wouldn't be able to [say], sir, because I never saw who did it."

Specialist Lowe did place Hill at the scene when appellant was strapped to his chair, but he indicated that Hill was in another part of the orderly room at the time. Lowe testified, "He was in the area, yes, but he wasn't right in the immediate area, no." Lowe explained that Hill had been in an area of the room where he could have seen appellant strapped in his chair, but he could not say that Hill did see appellant. "He may or may have not seen him, but he was in the orderly room at the time." Finally, the military judge asked, "If, bottom line question, Specialist Lowe, if Sergeant Hill were to testify that he did not know that Gonzalez was strapped to the chair, would he be lying?" Lowe responded: "He could possibly or he could possibly not. I couldn't say for sure that he did see him, but he was up, you know, in the front."

The last potential witness was Captain Musgrave. He testified that he had seen appellant on the day in question but at no time did he see appellant strapped in his chair—though threats to do so were made in order to restrain appellant. Also, Musgrave indicated that two other individuals were present who physically placed appellant in his chair, but he did not recall who those persons were. When defense counsel tried to impeach Captain Musgrave by calling his attention to his testimony at appellant's first court-martial, the effort largely failed: While this witness acknowledged testifying at the earlier trial that he thought that belts were wrapped around appellant and his chair, Musgrave also had testified then that he did not recall whether SFC Hill was there at the time—though it was a possibility.

2. UCMJ, 10 U.S.C. § 839(a).

While extrinsic evidence of a specific instance of conduct is inadmissible to attack credibility, *see* Mil.R.Evid. 608(b), such evidence may be received to show "[b]ias, prejudice, or any motive to misrepresent." Mil.R.Evid. 608(c). However, appellant's theory is tenuous that evidence of Hill's lying at appellant's prior court-martial actually would show a bias against him or in favor of the Government and that, in turn, this would support an inference that the witness also was lying at the instant court-martial. Indeed, appellant's theory of bias here is *so* tenuous that the evidence proffered in support thereof would seem collateral to this trial. *Cf. United States v. Richardson,* 15 M.J. 41, 47 (C.M.A.1983).

More significantly, the testimony available to appellant through these four witnesses would not in fact support an inference that Hill had lied at the first trial. None of them was able to say that, in his opinion, Hill knew or must have known that appellant had been strapped to his chair. As the military judge put it just before Captain Musgrave testified, "We have had some offers of proof which aren't holding up very well." Since the testimony offered by the defense did not establish the very fact for which it was being offered, the military judge did not err in excluding this evidence.[3]

The decision of the United States Army Court of Military Review is affirmed.

---

**3.** The judge allowed the defense to impeach the credibility of Sergeant Hill by offering the testimony of two persons who had been court-martial members at the first trial and who, on the basis of that experience, had formed the opinion that they would not believe Hill's testimony. We express no opinion as to the admissibility of this testimony.