UNITED STATES, Appellee,

v.

Specialist Four George M. JENKINS, SSN 310–74–5372, United States Army, Appellant.

CM 443761.

U.S. Army Court of Military Review.

30 May 1984.

Captain William T. Wilson, JAGC, argued the cause for the appellant. With him on the brief were Lieutenant Colonel R. Rex Brookshire II, JAGC, and Major Stephen R. Dooley, JAGC.

Captain Richard J. Fadgen, JAGC, argued the cause for the appellee. With him on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Major Thomas J. Leclair, JAGC.

Before WOLD, NAUGHTON and COHEN, Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM:

Appellant was convicted contrary to his pleas by a general court-martial composed of officer members of stealing a submachine gun, property of the United States, and disposing of the same in violation of Articles 121 and 108, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. 921, 908 (1976). The convening authority approved his sentence to a bad-conduct discharge, confinement at hard labor for two years, forfeiture of all pay and allowances and reduction to the lowest enlisted grade.

Appellant contends that he was denied a fair trial because the Government failed to provide the defense with a copy of a Government witness's conviction record

prior to trial despite a specific request by defense for such material.

Appellant's conviction for the offense of wrongful disposition of a submachine gun was based solely on the testimony of Orlando Crespo, the individual who allegedly received the weapon from appellant. Crespo was an Army-Air Force Exchange Service employee who sold retail and snack items to troops in the field. His summarized testimony follows.

Appellant approached Crespo to trade a "grease gun" for some marijuana. Crespo offered instead to exchange some potato chips, sodas or cigarettes. Appellant accepted Crespo's offer and placed the "grease gun" in a latrine. Crespo went to the latrine, took the "grease gun," wrapped it in his poncho and put it into his truck. As Crespo was leaving the area, a lieutenant stopped him and asked if he had a machine gun. Crespo responded that he did not. Crespo then realized he had bartered for a weapon, not a "grease gun" used to lubricate vehicles. He became frightened and took the weapon to the desert where he threw it away. When confronted by Criminal Investigation Command agents the following day, Crespo took them to the area where he discarded the weapon and told them "what he knew."

Prior to trial, appellant requested military conviction records of all persons the Government intended to call as witnesses at the trial. Appellant was aware that Crespo had at least a special court-martial conviction for disrespect to a noncommissioned officer since Crespo had admitted that fact during appellant's Article 32, UCMJ, investigation. However, no record

of Crespo's military conviction was provided to the defense.[1] After trial, defense counsel received Crespo's military records. These records indicate that, in addition to the disrespect offense, Crespo had been convicted of a disobedience offense and several Article 92, UCMJ, 10 U.S.C. § 892, offenses. The latter included violation of a general regulation by forging his commander's signature. As reflected by Defense Appellate Exhibit A, the promulgating order for Crespo's court-martial, the convening authority disapproved the findings of guilty of the Article 92, UCMJ, offenses.

In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that when the Government suppresses favorable evidence specifically requested by an accused, due process is violated where the evidence might have affected the outcome of the trial. *See also United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). In this case the suppressed evidence consisted of Crespo's conviction for forgery of ration cards.[2] As a threshold matter, this Court must determine whether the information concerning Crespo's forgery offense could have been utilized at trial. We answer this question in the affirmative.

Military Rule of Evidence 608(b) allows counsel to cross-examine a witness about specific instances of conduct which are probative of truthfulness or untruthfulness for the purpose of attacking or supporting the credibility of the witness. Under this rule, at the very least defense counsel could have cross-examined Crespo about his forgery offense.[3] *See* 3A J. Wigmore,

---

1. At trial the prosecution made a motion *in limine* to prevent cross-examination of Crespo concerning the prior special court-martial conviction for disrespect to a noncommissioned officer. Based on the information then available, the military judge granted the prosecution's motion.

2. Crespo's convictions for disrespect and disobedience to a noncommissioned officer are not pertinent to our inquiry. These convictions could not have been used by defense counsel for any purpose at trial.

3. We do not reach the more difficult question of whether evidence of Crespo's forgery offense could have been admitted under Military Rule of Evidence 609(a)(2). This rule allows the admission of a conviction for a crime involving dishonesty or false statement. Forgery falls within this category of offenses. *See United States v. Field*, 625 F.2d 862 (9th Cir.1980) (interpreting Federal Rule of Evidence 609(a)(2) from which Military Rule of Evidence 609(a)(2) is taken). For the purpose of applying Military Rule of Evidence 609, a conviction exists when a sentence has been adjudged. Mil.R.Evid.

*Wigmore on Evidence,* sec. 982 (Chadbourne rev. 1970). *See also United States v. Leake* 642 F.2d 715 (4th Cir.1981) (quotes Wigmore in defining scope of Federal Rule of Evidence 608(b)).[4] In reaching this determination, we do not speculate as to whether defense counsel would have had a reasonable basis to ask Crespo about his forgery offense even though his conviction was disapproved. The drafter's analysis to Military Rule of Evidence 608(b) indicates that counsel should not, as a matter of ethics, attempt to elicit evidence of misconduct unless there is a reasonable basis for the question. Manual for Courts-Martial, United States, 1969 (Revised edition), Appendix 18, Analysis of 1980 Amendments to Manual for Courts-Martial, Rule 608 at A18–88. Since the Government's failure to disclose Crespo's military records prevented defense counsel from having the initial information on which to proceed, we assume for the purpose of resolving the issues before us that defense counsel could have obtained the factual information necessary to question Crespo about the forgery offense.

■ Finding that the undisclosed information could have been used at trial, we now determine whether such evidence "might have affected the outcome of the trial." The Government incorrectly urges that this inquiry translates into whether the undisclosed evidence raises a reasonable doubt about the appellant's guilt. The test advocated by the Government applies in situations where no request or only a general request for information is made by the defense. In those situations, to ascertain whether the Government's failure to volunteer evidence constituted error, the courts ask whether "the omitted evidence creates a reasonable doubt that did not otherwise exist." *United States v. Agurs,* 427 U.S. at 112, 96 S.Ct. at 2401 (1976).

When, as here, a specific request for information has been made, the degree of prejudice necessary to entitle an accused to relief is reduced. An accused must only show that the evidence "might have affected the outcome." While this test requires something greater than the mere possibility the undisclosed evidence could have had some impact on the jury, the test does not require that the evidence raise a reasonable doubt as to whether the accused committed the offense.

Crespo's credibility was central to the Government's case concerning the wrongful disposition of the submachine gun. Based upon our assessment of the evidence we believe the additional evidence concerning Crespo's forgery offense does more than provide a basis for speculation that the members could have been affected in their deliberations with respect to the wrongful disposition charge. We consider it entirely reasonable to conclude that if the members had been presented with additional information attacking Crespo's credibility they might have returned a finding of not guilty to that offense. In the interests of judicial economy we will set aside the finding of guilty of that offense and reassess appellant's sentence.

We have considered the remaining assignments of error, including those raised by appellant, and find them without merit.

The findings of guilty of Charge I and its Specification are set aside and that charge and specification are dismissed. The remaining findings of guilty are affirmed. Only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for one year, forfeiture of all pay and allowances for one year and reduction to the grade of Private E–1 is affirmed.

609(f). The cases do not address the effect a convening authority's subsequent disapproval of the conviction has upon its admissibility. See generally *United States v. Frazier,* 14 M.J. 773 (A.C.M.R.1982), *pet. denied,* 16 M.J. 93 (1983), for a thorough discussion of Military Rule of Evidence 609.

4. Military Rule of Evidence 608(b) is taken without significant change from Federal Rule of Evidence 608(b). Manual for Courts-Martial, United States, 1969 (Revised edition), Appendix 18, Analysis of 1980 Amendments to Manual for Courts-Martial, Rule 608 at A18–87.