**UNITED STATES, Appellee,**

v.

**Staff Sergeant Michael P. RODKO, 209–42–9765, United States Army, Appellant.**

**ACMR 9003433.**

U.S. Army Court of Military Review.

26 March 1992.

For Appellant: Captain Michael P. Moran, JAGC, Captain Timothy M. Lawlor, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Timothy W. Lucas, JAGC, Captain Steven M. Walters, JAGC (on brief).

Before CREAN, WERNER, and HAGAN, Appellate Military Judges.

## OPINION OF THE COURT

CREAN, Senior Judge:

Contrary to his pleas, the appellant was convicted by a special court-martial composed of enlisted members of carnal knowledge and indecent acts with his thirteen-year-old natural daughter, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934 (1982). The convening authority approved the adjudged sentence of a bad-conduct discharge.

This case is a classic swearing contest between the daughter victim and the father assailant. The government's case consisted solely of the testimony of the appellant's daughter, Priscilla. She testified that between December 1989 and April 1990, the appellant, on approximately forty instances, required her to touch his penis and masturbate him. The appellant would also

rub his hand and penis on her vagina, and occasionally would insert either his finger or penis approximately a half inch inside her vagina.

The defense's theory of the case was that Priscilla lied to her mother about the appellant's actions, and this little lie got bigger as she told the story to more people and the biggest lie was her testimony in court. Several witnesses were presented by the defense to attack the credibility of Priscilla's allegation. A medical doctor testified that he examined Priscilla and found her hymen was still intact about a half inch inside the vaginal canal. Mrs. Rodko, the appellant's wife and Priscilla's mother, testified that Priscilla has been caught lying and does not have a reputation for truthfulness. The appellant's sister, Priscilla's aunt, who Priscilla visited frequently, also testified that she has caught Priscilla lying on occasion.

During his cross-examination of Priscilla, the trial defense counsel asked her about a statement she had given to the Criminal Investigation Command (CID) agent assigned to the case. She did not admit to any inconsistencies. Instead, she insisted that her in-court testimony was either the same as that she gave the CID agent or that she could not remember what she had told the agent. The trial defense counsel then called the CID agent and tried to introduce the statement that Priscilla had given him. The trial counsel objected and the following discussion ensued:

MJ. All right. Counsel, you propose—what do you propose to do? What do you propose to elicit from this witness? May I have the document, Defense Exhibit A for Identification, which is her statement of apparently 20 April?

DC. Yes, sir.

MJ. Now, what do you propose to do with that?

DC. I propose to show the panel that she has made prior inconsistent statements; and to impeach her credibility.

MJ. Well, she was here and you were able to do that. How do you propose—

DC. Sir, I ask her questions. That [sic] don't know for a fact that she has been inconsistent. They haven't seen her statement. Certainly she made some admissions that she had been inconsistent but that is different than having them see the document to see the inconsistencies. There are two statements in there regarding insertion of one half inch of both a finger and a penis. She has denied the one half inch of the penis.

MJ. I understand and that could have—you could have accomplished that with the statement. My question is, of this witness, how are you going to use that statement in relationship to this witness?

DC. This witness took the statement. I am laying the foundation for the admission of it. The relevance was established with the last witness [Priscilla]. In addition—

MJ. Well, assuming—all right. So you are attempting to do what with the statement again?

DC. To impeach the credibility of the last witness by showing that she has made prior inconsistent statements.

MJ. The previous witness?

DC. Yes, sir.

TC. He doesn't know what the witness said—

MJ. Excuse me. Excuse me. There is an objection to that?

TC. Yes, sir.

MJ. Sustained.

DC. Okay, sir. He did the interview. I could elicit from him what he heard her say without the use of the statement.

TC. I would object to that also.

MJ. The rule for your objection.

TC. As to hearsay. He had her here, let her say what she wanted to tell him.

MJ. Why is this not classic hearsay?

DC. I am not offering it as to the proof of the prior statement being true, I am offering it to show that she has made prior inconsistent statements. I understand there to be a hearsay exception under 801.

MJ. Counsel, you have not shown me an exception to hearsay.

DC. Okay, sir, I will—

MJ. I don't see that it comes under 608. This witness talking about what that witness said to me or said to her—

DC. All right, sir. I will withdraw that and only question him regarding the method of interrogation to show that her story changed. And that is not inconsistent with what I asked her.

MJ. All right. So you propose to question this witness as to what?

DC. The manner of questioning the victim.

MJ. All right.

DC. To show that influenced the content of her statement.

MJ. All right. What else?

DC. Apparently that's all.

MJ. If your point is to show that the previous witness at a different place and time, made different statements, you did it through that witness—

DC. Well, sir, I can withdraw him and bring the other witness in and then bring him back. I guess that might work better. It will become more obvious what I am trying to do, if I do that.

MJ. If it—

DC. The mother is going to testify that the story was definitely told to her and that during the course of the interrogation it changed. That's the argument.

MJ. Counsel, I think that you are going to have to before I permit that, you are going to have to impeach the witness. Are we not trying to prove by extrinsic evidence under 608 some specific incidences of misconduct and in this case lying?

DC. I didn't understand what you said, sir, because of the loudness of the air conditioning. Extrinsic evidence of what, sir?

MJ. Of misconduct? Isn't that what you are trying to do? She says something occurred at another time and you have evidence to the contrary. Are you trying to establish another act at another time?

DC. Other act?

MJ. Or other conduct. In this case lying. I will permit you to recall the previous witness and you may ask questions that you have omitted initially. Until you can show me a basis for it, I will not permit inquiry of this witness in an attempt to impeach the previous witness through this witness without a foundation.

DC. Okay, sir.

MJ. Now, this witness will testify as to the methods and manner of conduct?

DC. Yes, sir, that's right.

MJ. You can certainly proceed with that. You can do many other things but asking this witness what the previous witness said—

DC. Yes, Your Honor, I understand your ruling.

MJ. I will permit you to recall the previous witness. I won't foreclose your defense.

After a recess, the military judge further expanded on his ruling before recalling the members.

MJ. Defense Counsel, upon reflection I will permit you to inquire into the previous statement by the previous witness. I will ask that you be specific into the areas that you are reconceived [sic] with. In other words, any impeachment areas that you want to bring out as a part of the previous statement, if you focus on them, I think there is a tie in.

DC. I understand, sir.

TC. Sir, what—

MJ. I am doing this under consideration of Rule 613, use of prior statements of witnesses.

TC. Is that 613(a) or 613(b) that you are looking at? Because (a) says that a witness concerning prior statements be "by the witness", referring to the person that is on the stand in their prior statement.

MJ. I understand. Under 613(a). It would also appear to bring out the prior inconsistencies of other witnesses as well.

TC. Let my objection be noted. I don't see that at all in the rule.

MJ. And this would be under (b), extrinsic evidence. It is my view that the trial counsel must be permitted an opportunity to response [sic]. If any inconsisten-

cies are shown, trial counsel will be given an opportunity to respond to any new inconsistencies that are apparently discovered. So if the defense brings out any new inconsistencies I'll permit the trial counsel the opportunity to respond.

The trial defense counsel commented during his closing argument on Priscilla's credibility. The military judge gave the standard instructions on credibility of witnesses, alibi, prior inconsistent statements, and the untruthfulness of Priscilla in the past. After the court closed to deliberate on findings, the court members requested that Priscilla's prior statement be provided to them. The military judge denied their request since the statement had not been admitted in evidence. Later, the court members asked that portions of Priscilla's testimony be read to them.

The appellant asserts that, the military judge erred by failing to admit Priscilla's statement and, the evidence is legally and factually insufficient to support the findings of guilty. Since this Court agrees that the military judge should have admitted the statement, our decision negates the need to discuss the legal and factual sufficiency of the evidence.

Turning to whether the military judge erred in failing to admit Priscilla's statement, we note that the government has conceded the statement should have been admitted. However, the government argues that the appellant actually benefited by the statement not being admitted because the graphic details in the statement would have been detrimental to the appellant. The government also argues that this error was harmless since the trial defense counsel was able to use the statement in questioning the CID agent and allowed to argue the question of Priscilla's credibility. The military judge also gave the general instruction on credibility of witnesses. Finally, the government contends that the trial defense counsel waived the error because the military judge gave him the opportunity to recall Priscilla to question her but did not do so.

■ Prior inconsistent statements are admissible to impeach a witness. Manual for Courts–Martial, United States, 1984, Military Rules of Evidence 613 [hereinafter Mil.R.Evid.]. Extrinsic evidence of a prior inconsistent statement by a witness is generally not admissible unless the witness is afforded an opportunity to explain or deny the statement and the opposing party is afforded the opportunity to interrogate the witness thereon, or the interests of justice otherwise require. Mil.R.Evid. 613(b). The Federal courts, in interpreting the parallel rule for their courts, Federal Rule of Evidence 613(b), do not admit extrinsic evidence of prior inconsistent statements if the declarant is available to testify, admits making the statement and admits to the inconsistency. *United States v. Soundingsides*, 820 F.2d 1232 (10th Cir.), *reh'g denied*, 825 F.2d 1468 (1987). This view is also applicable for use in courts-martial. *United States v. Button*, 34 M.J. 139, (C.M.A.1992). However, in this case, while the declarant did testify, she did not admit to the inconsistencies nor did she remember what she had said in the statement to the CID agent.

As the Drafter's Analysis of Military Rule of Evidence 613(b) observes, "[t]he Rule does not specify any particular timing for the opportunity for the witness to explain or deny the statement nor does it specify any particular method." Mil. R.Evid. 613(b) analysis at A22–44. In *United States v. Callara*, 21 M.J. 259, 265 (C.M.A.1986), the Court of Military Appeals held that, "the opportunity to explain or deny may come *after* the alleged inconsistency has been revealed through a third party because the maker of the statement is not entitled to 'be confronted with the statement immediately.'" *Id.* (citing *United States v. Praetorius*, 622 F.2d 1054, 1065 (2d Cir.1979), *cert. denied*, 449 U.S. 860, 101 S.Ct. 162, 66 L.Ed.2d 76 (1980)). The trial defense counsel was trying to lay a foundation with the CID agent to admit Priscilla's statement as a prior inconsistent statement to impeach her credibility. This prior statement was admissible as proper impeachment evidence and the military judge erred in refusing to admit the statement. *See generally United States v.*

*Dodson,* 21 M.J. 237, 238 (C.M.A.), *cert. denied,* 479 U.S. 1006, 107 S.Ct. 644, 93 L.Ed.2d 701 (1986).

■ The military judge's error in refusing to admit the statement must be tested for prejudice. *United States v. Barnes,* 8 M.J. 115 (C.M.A.1979). The government's case rested entirely on the testimony of Priscilla. It was her testimony that provided evidence of the appellant's guilt. There was not overwhelming evidence of guilt or even physical evidence to corroborate Priscilla's accusations. Therefore, Priscilla's credibility was the key to the appellant's case. Any credible evidence that was lawfully admissible concerning her credibility was crucial to the appellant. The failure of the military judge to admit an otherwise admissible prior inconsistent statement was prejudicial to the appellant. This is very clear from the court members' request to see the statement of Priscilla and to have portions of her testimony reread to them. We cannot say that, even if the statement had been admitted, the findings of guilty would have been the same. Accordingly, we find that the military judge's error in failing to admit Priscilla's prior inconsistent statement was prejudicial to the appellant.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Judge WERNER and Judge HAGAN concur.