**UNITED STATES, Appellee,**

v.

**Staff Sergeant Ignatius M. MONTGOMERY, United States Army, Appellant.**

**ARMY 9800799.**

U.S. Army Court of Criminal Appeals.

6 Dec. 2001.

---

**662**

For Appellant: Captain Stephanie L. Haines, JA (argued); Colonel Adele H. Odegard, JA; Major Jonathan F. Potter, JA; Major Kirsten V.C. Brunson, JA (on brief); Major Imogene M. Jamison, JA; Major Mary M. McCord, JA.

For Appellee: Major Paul T. Cygnarowicz, JA (argued); Colonel David L. Hayden, JA; Major Anthony P. Nicastro, JA (on brief); Lieutenant Colonel Denise R. Lind, JA.

Before CANNER, CARTER, and HARVEY, Appellate Military Judges.

## OPINION OF THE COURT

HARVEY, Judge:

A special court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of willfully disobeying a superior commissioned officer, assault consummated by a battery, and adultery, in violation of Articles 90, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 890,

928, and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for ninety days, forfeiture of $615.00 pay per month for three months, and reduction to Private E1. The convening authority credited appellant with five days of confinement credit and waived automatic forfeitures of pay, directing payment of such monies to appellant's spouse pursuant to Article 58b(b), UCMJ, 10 U.S.C. § 858b(b).

In this Article 66, UCMJ, 10 U.S.C. § 866, appeal, appellate defense counsel assert eight assignments of error, and appellant raises eight issues for our consideration pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). Government appellate counsel counter that all assigned and *Grostefon* errors lack merit and urge us to affirm the findings and sentence. We find that appellant was prejudiced by the cumulative effect of the military judge's erroneous decisions: (1) denying defense requests for continuances; (2) prohibiting two witnesses from testifying about the character of Ms. Jones (the victim); (3) prohibiting cross-examination of Ms. Jones as to instances of alleged untruthfulness, specific contradiction, and bias; and (4) prohibiting extrinsic impeachment evidence showing Ms. Jones' bias.

## FACTS

Ms. Jones was the principal prosecution witness on the merits. She provided the only direct evidence of the offenses. Ms. Jones testified that she engaged in a sexual relationship with appellant from about November 1996 until about February 1997. She testified that appellant paid her before the first time they engaged in sexual intercourse, and he either paid her or performed other favors for her the other three or four times they engaged in sexual intercourse. Ms. Jones ended the relationship with appellant because he was married. On cross-examination, Ms. Jones testified that she learned from appellant's medical records that he was a hermaphrodite,[1] and that she did not know if he had a vagina or if he was circumcised.

---

1. A hermaphrodite is a person with both male and female sexual organs. Webster's Third New International Dictionary 1059 (1981). There was

no evidence presented at trial to support Ms. Jones' assertion that appellant was a hermaphrodite.

Initially, Ms. Jones denied that she owed appellant money. Later, on questioning by the military judge, Ms. Jones admitted that appellant loaned her money "a couple of times," and stated that appellant knew that she had to pay him back. She denied that she gave appellant forged checks in return for cash.

Ms. Jones further testified that when appellant arrived unexpectedly at her residence on 10 August 1997, he was upset with her because she was involved in another relationship. An argument ensued, during which appellant grabbed Ms. Jones by her neck. She pushed him away, scratched him, and tore a necklace from his neck. Appellant pulled out his pocketknife, opened it, and held the blade against Ms. Jones' wrist. Appellant threatened to kill Ms. Jones,[2] and then cut her right wrist. He also cut her left thumb. Ms. Jones told appellant that she did not want her children to see her bleeding and went next door to get cleaned up. Ms. Jones called 911 from her neighbor's residence. The civilian police arrived, arrested appellant, and seized a knife from his pocket. The cut to Ms. Jones' wrist involved a lacerated tendon, which Ms. Jones was treated for that day in the emergency room. Ms. Jones failed to return for any follow-up medical appointments.

The military judge admitted into evidence appellant's sworn, written statement to civilian police. Appellant's statement indicated that on 10 August 1997, he went to see Ms. Jones because she owed him money. Appellant received several checks from Ms. Jones that he cashed for her. These checks were returned for insufficient funds, causing appellant to lose $900.00. Ms. Jones told him that she did not have any money and asked appellant to leave her residence because of her fiancé. Appellant was cleaning his fingernails with his knife when Ms. Jones grabbed the knife. During the struggle for possession of his knife, appellant pushed Ms. Jones, causing her to accidentally cut herself. Appellant did not testify on the merits.

On 25 November 1997, appellant received a written order from his brigade commander not to contact or attempt to contact Ms. Jones either directly or through third parties [hereinafter "no-contact order"]. Ms. Jones testified that she received two notes in appellant's handwriting at her residence between September and December 1997. One note referenced the result of appellant's 2 December 1997 trial in civilian court.

Appellant's defense had two-prongs: (1) he attacked Ms. Jones' credibility; and (2) he asserted, based on his sworn written statement to civilian police, that the cutting of Ms. Jones' wrist was an accident that resulted from her aggressive attempt to grab his knife while he was using it to clean his fingernails. The military judge denied a series of defense motions for continuances and witnesses. He also refused to permit the cross-examination of Ms. Jones concerning specific instances of prior dishonest, aggressive, and violent conduct; extrinsic evidence to contradict her testimony that she was quiet and passive when involved in a stressful confrontation; and evidence of her bias against appellant.

### Denial of Continuances

The military judge denied several defense requests for continuances that prejudiced appellant. The evening before the members were scheduled to be impaneled, the government notified the defense that two witnesses, who they previously intended to call to prove the violation of the no-contact order, could not be located. The government also provided the defense with notes that Ms. Jones delivered to the government the same day. Ms. Jones said that she recognized appellant's handwriting on the notes, and that they were left at her home while she was not there. Prior to Ms. Jones' delivery of these notes to the trial counsel, the testimony of the two witnesses who could no longer be located constituted the only evidence of appellant's attempt to contact Ms. Jones in violation of the no-contact order. The morning after receiving this notification by the government, the defense requested a contin-

---

**2.** Despite Ms. Jones' testimony, the panel acquitted appellant of the offense of communicating a threat.

uance based on this significant change in the government's evidence regarding appellant's violation of the no-contact order. The defense requested the continuance in order to canvass Ms. Jones' neighbors and otherwise investigate the origin of the notes. The military judge gave the defense from 0956 until after lunch to investigate the origin and reliability of the notes and to interview Ms. Jones.[3]

At the next trial session, but still prior to assembly, the defense did not ask for an additional delay to investigate the notes. The defense instead requested a continuance to conduct handwriting analysis of two checks[4] that Ms. Jones allegedly forged on the closed account of a deceased person. The checks were payable to appellant. The defense indicated that Ms. Jones denied forging the two checks, and asked for an opportunity to prove that Ms. Jones wrote the checks to establish that she owed appellant money, which would be admissible to show her bias under Military Rule of Evidence [hereinafter Mil. R. Evid.] 608(c). The military judge denied the defense motion for a continuance.

During *voir dire,* a legal specialist from the Trial Defense Service offices handed appellant's defense counsel Fort Hood Social Work Services (SWS) records, which she had just obtained.[5] The defense counsel immediately requested a continuance to review and investigate the contents of the SWS records,[6] as well as to investigate any leads that flowed from their review. The defense counsel contended that the SWS records could lead to the discovery of other admissible evidence, such as witnesses who could testify about Ms. Jones' character traits of peacefulness or truthfulness. The military judge denied this request for a continuance without providing an explanation for his decision. The defense counsel then asked for a one-hour delay to review the SWS records prior to opening statements. The military judge refused, stating that he was "not going to delay calling the court members at this juncture," and that he would "permit" defense counsel to defer his opening statement until the beginning of the defense case if he was not prepared to give it at that time.

"The military judge ... may, for reasonable cause, grant a continuance to any party for such time, and as often, as may appear to be just." UCMJ art. 40, 10 U.S.C. § 840. The military judge sets the time for each session of a court-martial. Rule for Courts–Martial [hereinafter R.C.M.] 801(a)(1). "A continuance may be granted only by the military judge." R.C.M. 906(b)(1). "Reasons for a continuance may include: insufficient opportunity to prepare for trial; unavailability

3. Newly assigned defense counsel were unable to interview Ms. Jones until the day the members were scheduled to be impaneled because Ms. Jones did not previously make herself available to be interviewed.

4. There was no explanation in the record of trial as to how the defense obtained the two checks.

5. Over two months before trial, the defense submitted two supplemental discovery requests that sought SWS records pertaining to Ms. Jones under the name of Ms. Jones or her husband, Sergeant First Class (SFC) Jones. At two Article 39(a), UCMJ sessions, the military judge denied the defense request for the SWS records and refused to review any available SWS records *in camera* to determine their admissibility. *See United States v. Briggs,* 48 M.J. 143, 145 (1998) (noting that an *in camera* review is the "preferred practice" in ruling on discovery requests because it "inspires confidence in the fairness of the system and fulfills the spirit of the rules of evidence and our case law"). It was not disclosed how the defense obtained SWS records pertaining to SFC Jones and Ms. Jones.

6. The SWS records contain thirty pages and cite four incidents involving Ms. Jones: (1) In August 1993, Ms. Jones was cited for child neglect in Germany. (2) On 27 September 1994, SFC Jones went to his wife's apartment and found the children unattended. Ms. Jones and SFC Jones argued about access to a car and her leaving the children unattended. She told one of the children to get a knife and struck SFC Jones on the mouth with a ceramic ornament. At the time, their children were two, three, and four years old. (3) On 1 January 1996, Ms. Jones went to SFC Jones' residence and attempted to strike SFC Jones' female friend (Kimberly Carrington). Sergeant First Class Jones pushed Ms. Jones away, and Ms. Jones "raised [a knife] at him as if she was going to stab him with it." (4) In 1994 and 1996, SFC Jones indicated that Ms. Jones was using cocaine or other drugs and that she may be involved in prostitution. The SWS records also indicate that SFC Jones and Ms. Jones were married more than eight years prior to trial, but were separated in 1993.

of an essential witness; [and] the interest of Government in the order of trial of related cases ...." *United States v. Weisbeck*, 50 M.J. 461, 464 (1999) (alteration in original) (citing R.C.M. 906(b)(1) discussion).

■ A military judge's decision to deny a continuance is tested for an abuse of discretion. *Id.; United States v. Miller*, 47 M.J. 352, 358 (1997). The military judge commits an abuse of discretion when his reasons or rulings are "clearly untenable and ... deprive a party of a substantial right such as to amount to a denial of justice." *Weisbeck*, 50 M.J. at 464 (citation omitted).

■ In *Weisbeck*, our superior court applied the following twelve factors before concluding that the military judge abused his discretion by denying a six-week defense continuance to permit a defense expert to testify:

> [S]urprise, nature of any evidence involved, timeliness of the request, substitute testimony or evidence, availability of witness or evidence requested, length of continuance, prejudice to opponent, moving party received prior continuances, good faith of moving party, use of reasonable diligence by moving party, possible impact on verdict, and prior notice.

*Id.* (quoting *Miller*, 47 M.J. at 358); *see also* Francis A. Gilligan & Frederic J. Lederer, *Court–Martial Procedure* § 18–32.00, at 704 (1991).

■ Applying the twelve *Weisbeck–Miller* factors to this case, we conclude: (1) *Surprise.* The trial counsel was not surprised by the defense request for a short continuance after receipt of the checks and the SWS records. (2) *Nature of the Evidence.* The SWS records and checks potentially provided admissible character and bias evidence pertaining to Ms. Jones. (3) *Timeliness.* The defense requested a continuance the day after receiving the checks and immediately after receiving the SWS records. (4) *Substitute Testimony or Evidence.* The defense was unable to obtain substitute evidence relating to the same incidents described in the SWS records or to the two forged checks. (5) *Availability of Witness or Evidence Requested.* It is probable that a reasonable

continuance would have allowed the defense to investigate the SWS records and checks and to obtain witnesses who could present additional evidence to the members. (6) *Length of Continuance.* The defense did not specify the length of the requested continuances. (7) *Prejudice to Opponent.* The government did not assert any prejudice arising from the continuances. (8) *Prior Continuances.* After the defense received the notes, checks, and SWS records, there were no continuances beyond a three-hour recess and two subsequent overnight recesses during the merits phase of appellant's trial. (9 & 10) *Good Faith and Reasonable Diligence of Moving Party.* There was no challenge of the good faith or diligence of the defense requests for a continuance. (11) *Possible Impact on the Verdict.* Ms. Jones was the most critical government witness. The SWS records and forged checks provided key evidence of Ms. Jones' character and bias. (12) *Prior Notice.* The military judge did not provide sufficient time to the defense to investigate the new evidence provided on the eve of trial.

The military judge abused his discretion because a reasonable continuance was warranted to permit the defense to investigate the information in the SWS records and to establish that Ms. Jones wrote the two forged checks. "We conclude that the military judge's focus on holding the defense's feet to the fire" and moving the trial along without further delays "arbitrarily deprived appellant of the tools he needed" to defend himself. *United States v. McAllister*, 55 M.J. 270, 276 (2001).

### Denial of Witnesses

The military judge's denial of continuances adversely affected a subsequent defense request for two witnesses who would potentially testify about Ms. Jones' character: SFC Jones and Ms. Carrington. Based upon their review of the SWS records, the defense initially proffered that SFC Jones and Ms. Carrington would testify that Ms. Jones' had a violent character and possibly that she had a poor character for truthfulness. However, there was no evidence to suggest that the defense: (1) ever interviewed SFC Jones or Ms. Carrington; (2) requested them as wit-

nesses prior to trial; and (3) included the "address or location of the witness such that the witness [could] be found upon the exercise of due diligence." R.C.M. 703(c)(2)(B)(i). Additionally, the SWS records listed only one altercation between Ms. Carrington and Ms. Jones, and did not otherwise describe the relationship between them.

■ The defense in a court-martial is entitled to an "equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." UCMJ art. 46, 10 U.S.C. § 846. Rule for Courts–Martial 703(a) implements the right of the prosecution and the defense to an "equal opportunity to obtain witnesses and evidence, including the benefit of compulsory process." The standard of review for a denial of a request for the production of a witness is an abuse of discretion. *United States v. McElhaney,* 54 M.J. 120, 126 (2000) (citing *United States v. Rockwood,* 52 M.J. 98, 104 (1999), *cert. denied,* 528 U.S. 1160, 120 S.Ct. 1173, 145 L.Ed.2d 1081 (2000)). "[I]f the testimony of a given witness is material, the live presence of that witness must be furnished or the proceedings abated, unless, in the sound discretion of the trial judge, the testimony of that witness would be merely cumulative to the testimony of other defense witnesses." *Miller,* 47 M.J. at 359 (alteration in original) (quoting *United States v. Williams,* 3 M.J. 239, 243 (C.M.A.1977)).

■ "Testimony of a witness is 'necessary when it is not cumulative[7] and when it would contribute to a party's presentation of the case in some positive way on a matter in issue.'" *Id.* (quoting *United States v. Breeding,* 44 M.J. 345, 350 (1996)). "We will not set aside a judicial denial of a witness request 'unless [we have] a definite and firm conviction that the [trial court] committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *McElhaney,* 54 M.J. at 126 (alteration in original) (citations omitted). Timeliness of a witness request may also be considered when determining whether pro-

duction of the witness is necessary. *Id.* at 127.

■ The defense proffer as to Ms. Carrington was not sufficient to establish that she was "acquainted with the witness well enough to have had an opportunity to form an opinion of the witness' character for truthfulness." *United States v. Toro,* 37 M.J. 313, 317 (C.M.A.1993). The only proffer of any relationship between Ms. Carrington and Ms. Jones was a single altercation between the two, which was insufficient to establish a foundation for Ms. Carrington's opinion of Ms. Jones. *See United States v. Goldwire,* 55 M.J. 139, 144 (2001) (holding that a first sergeant had a sufficient basis for his opinion that the appellant was not truthful because of their extensive relationship, even though the first sergeant had knowledge of only one lie by the appellant); *McElhaney,* 54 M.J. at 127; *Breeding,* 44 M.J. at 350–51 (discussing basis for character opinions). Nevertheless, we conclude that any weakness in the defense proffer for these two witnesses was caused by the military judge's failure to order discovery of the SWS records and his denial of the defense requests for a continuance to contact Ms. Carrington and SFC Jones. Therefore, we find that the military judge abused his discretion in denying the defense request for these two witnesses.

### Impeachment of Ms. Jones

*a. Cross-examination as to specific instances of alleged untruthfulness*

The military judge refused to permit the defense counsel to cross-examine Ms. Jones concerning her lie to the police about her identity after being stopped in an area known for prostitution and narcotics activity on 29 August 1995, and her forgery of checks to three or four persons other than appellant and subsequent lies about forging the checks. The defense offered this impeachment evidence under Mil. R. Evid. 608(b), which provides:

> Specific instances of conduct of a witness, for the purpose of attacking or supporting the credibility of the witness, ... may ...

---

7. We recognize that two witnesses, Ms. Carter and Mr. Jackson, testified that Ms. Jones had a poor character for truthfulness and was not a peaceful person. However, we do not consider their testimony sufficient to have made the testimony of the other denied witnesses cumulative.

in the discretion of the military judge, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning character of the witness for truthfulness or untruthfulness. . . .

The military judge ruled that he would not permit the cross-examination of "the whole series of instances of alleged untruthfulness" because it had "no apparent relationship or connection with the events leading up to what occurred on the 10th of August." [8]

■ The military judge's limitations upon cross-examination under Mil. R. Evid. 608(b) regarding specific instances of misconduct is reviewed for an abuse of discretion. *United States v. Stavely*, 33 M.J. 92, 94 (C.M.A. 1991); *United States v. Lee*, 48 M.J. 756, 760 (Army Ct.Crim.App.1998).

Our superior court has explained that cross-examination regarding specific acts, if they pertain to truthfulness or untruthfulness, is permitted, whereas cross-examination related to other bad acts unrelated to honesty and integrity is not:

Acts of perjury, subornation of perjury, false statement, or criminal fraud, embezzlement or false pretense are, for example, generally regarded as conduct reflecting adversely on an accused's honesty and integrity. Acts of violence or crimes purely military in nature, on the other hand, generally have little or no direct bearing on honesty and integrity.

*United States v. Weaver*, 1 M.J. 111, 118 n. 6 (C.M.A.1975); *see also United States v. Manske*, 186 F.3d 770, 775 (7th Cir.1999) (adopting "[t]he middle view [of looking at Federal Rule of Evidence 608(b)] 'that behavior seeking personal advantage by taking from others in violation of their rights reflects on veracity,' " but " 'personal crimes' involving violence" do not) (quoting Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence*, 154 (2d ed.1994)).

■ The military judge erred when he refused to permit cross-examination of Ms.

Jones about the false statement about her identity that she gave to a police officer, because whether or not an individual lies to a police officer is highly probative of that individual's veracity. *See Stavely*, 33 M.J. at 93–94 (holding that the military judge's refusal to let the defense cross-examine a key witness about lying to her husband about checks cashed with insufficient funds was prejudicial error because such evidence was highly probative); *United States v. Owens*, 21 M.J. 117, 123 (C.M.A.1985) (holding that making of a false statement in an application for appointment as a Warrant Officer was a proper subject for cross-examination). The military judge also erred when he refused to allow cross-examination of Ms. Jones for forging checks to persons other than the accused and then lying about it. *See United States v. Jenkins*, 18 M.J. 583, 584–85 (A.C.M.R.1984) (holding that cross-examination of a witness regarding forgery of ration cards is permitted because it is probative of untruthfulness), *set aside on other grounds*, 23 M.J. 225 (C.M.A.1986).

*b. Instances of violence to show specific contradiction and bias*

Ms. Jones indicated upon cross-examination that after she was cut by appellant she felt fear, but she nevertheless played it cool when she went over to her neighbors seeking assistance. During redirect, the following exchange occurred between Ms. Jones and the trial counsel:

Q: Miss Jones, what type of person are you in terms of reacting to events that upset you?

A: I'm not—I'm not the type of person that makes a scene. I'm not—I get embarrassed real quick. I'm not the type of person that makes a scene.

Q: Do you rant and rave?

A: Hum?

Q: Do you rant and rave, flare your arms, anything like that?

A: No.

---

8. The military judge was primarily concerned that evidence regarding these other instances of untruthfulness was collateral to appellant's trial. Military Rule of Evidence 608(b) explicitly prohibits proof that the instance occurred using extrinsic evidence. "[T]he purpose of Rule 608(b)'s prohibition of extrinsic evidence is to avoid holding mini-trials on irrelevant or collateral matters." *United States v. Beauchamp*, 986 F.2d 1, 4 n. 1 (1st Cir.1993).

Q: This whole incident was shocking for you, correct?

A: Yes.

The military judge refused to permit the defense counsel to cross-examine Ms. Jones regarding specific instances of her prior aggressive and violent conduct to show specific contradiction or bias. The defense was not permitted to question her about assaults on five prior occasions upon five different persons. For two different reasons, we conclude that the military judge erred when he declined to permit cross-examination concerning these five assaults.

One method of impeachment is by "specific contradiction." *United States v. Sojfer,* 47 M.J. 425, 427 (1998); *United States v. Welker,* 44 M.J. 85, 89 (1996); *Toro,* 37 M.J. at 315. Impeachment by contradiction is a common law theory recognized by our superior court and other federal courts. *See Welker,* 44 M.J. at 89; *United States v. Banker,* 15 M.J. 207, 210 (C.M.A.1983) (and authorities cited therein) (noting that impeachment by contradiction "involves showing the tribunal the contrary of a witness' asserted fact, so as to raise an inference of a general defective trustworthiness"); *United States v. Benson,* 48 M.J. 734, 743 (A.F.Ct. Crim.App.1998) (holding that victim's testimony that he was not the kind of person who would threaten someone's life with a gun "opened the door to impeachment by contradiction" concerning an incident where the victim drew a gun on appellant's roommate); *see also* Manual for Courts–Martial, United States (2000 ed.), app. 22, Mil. R. Evid. 608 analysis, at A22–46 (noting that although a number of different methods of impeachment are not explicitly codified, the failure to so codify them "does not mean that they are no longer permissible").

■ "[I]f a witness makes a broad collateral assertion on direct examination that he has never engaged in a certain type of misconduct . . . he may be impeached by extrinsic evidence of the misconduct." *United States v. Trimper,* 28 M.J. 460, 467 (C.M.A. 1989); *see also United States v. Crumley,* 22

M.J. 877, 878 (A.C.M.R.1986) ("Extrinsic evidence of uncharged misconduct is admissible as an exception to . . . Mil. R. Evid. 608(b) if offered solely to impeach the credibility of a witness who voluntarily denies involvement in similar misconduct, and if such evidence is not otherwise violative of Mil. R. Evid. 403.") (footnote omitted); *United States v. Shaner,* 46 M.J. 849, 852 (N.M.Ct.Crim.App.1997).

■ By painting Ms. Jones as a person who was passive and quiet and not aggressive in the face of upsetting events, the prosecution invited cross-examination concerning her aggressive conduct in assaulting five different people. The military judge abused his discretion when he refused to allow the defense to cross-examine Ms. Jones concerning these incidents that contradicted her claim that she was "not the type of person that makes a scene." This cross-examination could have raised more than "an inference of a general defective trustworthiness" on the part of Ms. Jones. *Banker,* 15 M.J. at 210. Because this evidence may have "affected the members' view of the facts in question," relief is warranted. *Benson,* 48 M.J. at 742.

The defense counsel also argued that due to Ms. Jones' history of assaults and her troubles with Child Protective Services (CPS), she was in danger of losing her children if she was identified as the aggressor in another assault. Citing Mil. R. Evid. 608(c),[9] the defense contended that evidence of Ms. Jones' previous assaults and her history of child abuse and neglect were relevant to show her motive to lie and to pin the blame for the 10 August 1997 assault on appellant.

■ "A military judge's decision to admit or exclude evidence of bias, prejudice, or motive to misrepresent is reviewed under the abuse of discretion standard." *United States v. Bins,* 43 M.J. 79, 83 (1995) (citing *United States v. Gray,* 40 M.J. 77, 80 (C.M.A.1994)). "If the decision to admit or exclude evidence requires factfinding, the findings are reviewed under a clearly erroneous standard." *Bins,* 43 M.J. at 83 (citing *United States v. Quigley,* 40 M.J. 64, 66 (C.M.A.1994)). "Al-

9. Military Rule of Evidence 608(c) provides: "*Evidence of bias.* Bias, prejudice, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced."

though 'the partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony,' " a trial "court is afforded broad discretion in determining the probative value of evidence to determine its admissibility." *United States v. Morrow,* 177 F.3d 272, 297–98 (5th Cir.1999) (citations omitted).

"Bias may be induced by a witness' like, dislike, . . . or by the witness' self-interest." *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). "Although extrinsic evidence of misconduct is not admissible to show a witness' general character for truthfulness, it is admissible to impeach a witness by showing '[b]ias, prejudice, or any [other] motive' of the witness 'to misrepresent.' " *United States v. Hunter,* 21 M.J. 240, 242 (C.M.A.1986) (quoting Mil. R. Evid. 608(c)); *see also Banker,* 15 M.J. at 212; 3A John Henry Wigmore, *Evidence in Trials at Common Law* § 943 (James H. Chadbourn rev.1970). "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Abel,* 469 U.S. at 52, 105 S.Ct. 465. "[E]xposing witness bias is at the 'core' of the confrontation right." *Manske,* 186 F.3d at 778. If " 'the defense is completely [foreclosed] from exposing the witness's bias or motive to testify,' " then the 6th Amendment right to confrontation is implicated. *Id.* (quoting *United States v. Sasson,* 62 F.3d 874, 883 (7th Cir.1995)); *see also Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) ("The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' ") (citation omitted). "Weight and credibility [is] for the members alone to decide." *Bins,* 43 M.J. at 85. An appellant's theory of bias, prejudice, or motive to misrepresent, however, cannot be *"so* tenuous that the evidence proffered in support thereof would seem collateral to [the] trial." *United States v. Gonzalez,* 16 M.J. 423, 425 (C.M.A. 1983).

We hold that the military judge abused his discretion by refusing to permit cross-examination of Ms. Jones and by not allowing extrinsic evidence of the assaults documented in the SWS records, because they demonstrated her desire to avoid the potential loss of custody of her children by shifting the blame for the altercation to appellant. *See Gray,* 40 M.J. at 80–81 (holding that the defense had a right to cross-examine and present evidence of Department of Human Services' (DHS) investigations of child victim's parents for spousal and child abuse, when the investigators showed that the victim's family had a motive "to shift DHS attention from their own dysfunctional and abusive family situation" by accusing appellant of sexual molestation, and that appellant had a legitimate purpose for his initial contact with the victim's family).

"By excluding [this] evidence, the military judge deprived appellant of evidence which could have made his otherwise incredible explanation believable." *Gray,* 40 M.J. at 80. In testing a military judge's error in excluding bias evidence under Mil. R. Evid. 608(c), reversal is warranted where the "trial was a credibility contest between appellant and his alleged victim[,]" and this court "cannot discount the reasonable likelihood that the excluded evidence may have tipped the credibility balance in appellant's favor." *Id.* at 81.

*c. Forged checks to show a prior inconsistent statement and bias*

After Ms. Jones repeatedly denied that she defrauded appellant using forged checks written on the closed account of a deceased person, the defense proffered evidence to impeach Ms. Jones in the form of two checks she allegedly forged to appellant and the testimony of Ms. Carter, an acquaintance of Ms. Jones. This evidence was offered to show that: (1) Ms. Jones owed appellant money; (2) she was motivated to avoid repayment and prosecution for forging checks; and (3) she testified inconsistently with her prior statements to Ms. Carter. *See* Mil. R. Evid. 613(b).[10] Ms. Carter testified during

---

10. Military Rule of Evidence 613(b) provides:

*Extrinsic evidence of prior inconsistent state-*

an Article 39(a), UCMJ, hearing that Ms. Jones told her that she had appellant unknowingly cash forged checks for her on the account of a deceased person because he was "stupid enough" to do it. Ms. Jones said that, as a result, she owed appellant money. Ms. Carter said that Ms. Jones was trying to get a loan to pay appellant back. Although Ms. Carter did not see Ms. Jones write the checks, she recognized Ms. Jones' handwriting on two of the forged checks. The military judge declined to permit both Ms. Carter's testimony or any other extrinsic evidence that Ms. Jones defrauded appellant by using forged checks because he considered the evidence confusing, and because: (1) Ms. Carter lacked direct, personal knowledge about the checks; (2) the hearsay evidence Ms. Carter provided did not have sufficient guarantees of trustworthiness; and (3) the forged checks did not show bias under Mil. R. Evid. 608(c). The military judge said that he would include additional findings of fact and conclusions of law in the record of trial; however, no such findings or conclusions were attached to the record.

■■■■■ Ms. Carter's testimony about Ms. Jones' use of forged checks to defraud appellant was admissible under Mil. R. Evid. 613(b) as a prior inconsistent statement,[11] and under Mil. R. Evid. 608(c) as evidence of her bias against appellant. *See United States v. Bahr*, 33 M.J. 228, 230–33 (C.M.A. 1991) (holding victim's diary entries showed her state of mind and bias); *Stavely*, 33 M.J. at 94 (noting appellant's claim that "a controversy over the sale of a piece of furniture" was a motive to lie); *United States v. Tippy*, 25 M.J. 121, 122 (C.M.A.1987) (holding that informant's personal relationship with several Office of Special Investigations agents, at least one of which was sexual, was admissible

as evidence of bias); *see also Justice v. Hoke*, 90 F.3d 43, 48–49 (2d Cir.1996) (holding that erroneous exclusion of bias evidence of debtor relationship between defendant and primary prosecution witness was reversible error). Extrinsic evidence of Ms. Jones' theft from appellant by having him cash forged checks is also admissible because it supported appellant's explanation for going to see her the day she said he assaulted her. By keeping this evidence from the members, the military judge "exceeded his authority and usurped the members' role" by deciding that Ms. Jones was not biased or motivated by defrauding appellant. *Bins*, 43 M.J. at 85.

■■■■■ We are convinced that the military judge's erroneous decisions to prohibit continuances, two witnesses from testifying about Ms. Jones' character, extrinsic impeachment evidence of her assaults and two forged checks written to appellant to show Ms. Jones' bias, and cross-examination of Ms. Jones concerning: (1) her lie to the police about her identity; (2) her forgery of checks to persons other than appellant and lies about forging the checks; and (3) her assaults on five prior occasions upon five different persons had a cumulative effect and were sufficiently prejudicial to require reversal. *See United States v. Dollente*, 45 M.J. 234, 242–43 (1996); *United States v. Sowders*, 53 M.J. 542, 551–52 (N.M.Ct.Crim.App.2000). This was a close case factually. Ms. Jones' credibility was crucial. Although the military judge permitted some impeachment by inconsistent statements and allowed some character evidence which undermined her credibility in part, his exclusion of other significant evidence would have further eroded her credibility. Under these circumstances,

---

*ment of witness.* Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Mil. R. Evid. 801(d)(2).

11. The failure to confront Ms. Jones during her testimony with her alleged inconsistent statement to Ms. Carter would not have barred Ms. Carter's

testimony about the statement. The prosecution would still have had an "opportunity to explain or deny [the statement] *after* the alleged inconsistency ha[d] been revealed ... because the maker of the statement is not entitled to 'be confronted with the statement immediately.'" *United States v. Callara*, 21 M.J. 259, 265 (C.M.A.1986) (citing *United States v. Praetorius*, 622 F.2d 1054, 1065 (2d Cir.1979)); *see also United States v. Rodko*, 34 M.J. 980, 983 (A.C.M.R.1992) (discussing admissibility of extrinsic evidence of a prior inconsistent statement).

"we cannot reasonably discount the possibility that the errors had a substantial effect on the findings." *Id.* at 552 (citing *United States v. Banks,* 36 M.J. 150, 170–71 (C.M.A. 1992)). We conclude that appellant was denied his right to a fair trial. UCMJ art. 59(a), 10 U.S.C. § 859(a).

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Judge CANNER and Judge CARTER concur.