# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————

**No. ACM 39292**

————————

**UNITED STATES**
*Appellee*

**v.**

**William R. JONES**
Colonel (O-6), U.S. Air Force, *Appellant*

————————

Appeal from the United States Air Force Trial Judiciary

Decided 14 November 2018

————————

*Military Judge:* Joe W. Moore.

*Approved sentence:* Dismissal and confinement for 12 months. Sentence adjudged 17 March 2017 by GCM convened at Shaw Air Force Base, South Carolina.

*For Appellant:* Major Patricia Encarnación Miranda, USAF; Major Meghan Glines-Barney, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Clayton H. O'Connor, USAF; Mary Ellen Payne, Esquire.

Before MAYBERRY, JOHNSON, and MINK, *Appellate Military Judges*.

Chief Judge MAYBERRY delivered the opinion of the court, in which Senior Judge JOHNSON and Judge MINK joined.

————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————

MAYBERRY, Chief Judge:

Appellant was found guilty in accordance with his pleas of one specification of wrongful possession of child pornography in violation of Article 134, Uniform

Code of Military Justice (UCMJ), 10 U.S.C. § 934. Appellant was sentenced to a dismissal and confinement for 12 months. The convening authority approved the sentence as adjudged.

Appellant asserts three assignments of error (AOEs): (1) whether the omission of Prosecution Exhibit (PE) 6 renders the record of trial (ROT) incomplete; (2) whether the sentence is inappropriately severe; and (3) whether the military judge's denial of Appellant's motion for a continuance effectively denied Appellant full assistance from his confidential expert.[1] We find no prejudicial error and affirm.

## I. BACKGROUND

In January 2016, an investigator assigned to the South Carolina Attorney General's Office identified a computer within his jurisdiction that had accessed a peer-to-peer network searching for suspected child pornography files. After reviewing three files and confirming they contained images of minors engaged in sexually explicit conduct, the investigator opened a case. The location of the computer was later determined to be Appellant's home on Shaw Air Force Base (AFB). The investigator contacted the Air Force Office of Special Investigations (AFOSI) on Shaw AFB and turned the case over to them.

AFOSI obtained search authorization and went to Appellant's home on 11 February 2016. Appellant also gave consent to search his home, and ultimately AFOSI seized a total of six devices: a laptop computer, a desktop computer, an external portable hard drive (found in Appellant's home office), another external portable hard drive (found in Appellant's garage), a thumb drive, and Appellant's personal cell phone. Appellant provided the password for both the cell phone and the desktop computer. All six devices were sent to the Defense Computer Forensics Laboratory (DCFL) for examination. Child pornography was found on five of the devices and child erotica was found on one device. Additionally, the laptop contained a classified personal storage folder (.pst).[2]

Additionally, the DCFL analysis identified a number of programs on Appellant's laptop relevant to the images and videos contained on the various devices seized from Appellant's home:

---

[1] The second and third AOEs are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] The .pst file came from a Secret Internet Protocol Router (SIPR) network with dates that corresponded to the timeframe Appellant was deployed to Jordan. There was a separate AFOSI investigation involving this matter which did not result in charges in this case. Because the file was on the laptop at issue here, Appellant asserts it impacted his expert consultant's ability to review the evidence involved in the case.

- A Picasa program used to organize pictures and videos on Appellant's laptop. In the preview database file portion of that program, thumbnail versions of original full size photos are created. Thousands of images of child pornography were found in the Picasa folder.
- An Advanced Renamer program which is an organizational tool that allows files to be renamed en masse. There were 197 files found in this program including titles associated with child pornography images whose file names had been manipulated by using this program.
- A "clean.bat" file which was a batch file containing instructions to delete the contents of the Microsoft Office "recent folder" (removing traces of activity on the computer) for the profile "Me." This file was created by the "Me" profile user, and there was evidence the file had been run on the laptop.
- A "pass.txt" file that primarily contained usernames and passwords for various accounts but it also contained instructions for a DOS [Disk Operating System] command line using a function of the copy command to merge files. Specifically, it directed "copy decoy.jpeg [joint photographic experts group (compressed graphic)] plus hidden. RAR [compressed file similar to a zip file] into a file called decoy.jpeg." This would cause the RAR file to "disappear" behind the .jpeg. Conversely, if you opened that file using WinRAR, which was present on the laptop, it would ignore the .jpeg image and only open the RAR file.
- "KillDisk" and "Advanced Eraser" which are both programs that wipe data. They are promoted as secure deletion tools that physically over-write data to make it unrecoverable.

The analysis of Appellant's desktop computer also identified the presence of a "clean.bat" file and a wiping program called "Eraser" which was configured so that it did not wipe the contents of the Recycle bin found on the external hard drive found in Appellant's garage. Analysis of the external hard drive found in the garage established a file titled "De82" in the "Recycler" folder which stored deleted files. This file was determined to have originally been a folder titled "Recovered" with a sub-folder titled "LSM Main" which contained additional subfolders with pictures and videos containing child pornography. The forensic analysis established that the "LSM Main" folder went from the "MUI"[3] folder on the laptop to the "Recovered" folder (a user created name) on the external hard drive and then that folder was moved to the recycle bin.

---

[3] MUI stands for Multi-user Interface. The forensic expert testified that in the default installation of Windows XP Home, the MUI folder would only contain an executable program and would normally be otherwise empty.

Finally, the DCFL analysis addressed the Windows registry function called "shell bags." Shell bags are created when a file is opened on any computer using Windows Explorer (sometimes referred to as "My Computer"), and they contain the name, size, location, dates, and times of every folder that was ever opened by the user on a computer or on removable media. When a file is deleted, the shell bag is not removed. The DCFL forensic analysis found evidence of child pornography files within the content of numerous shell bags on the Appellant's computers.

During the guilty plea inquiry, Appellant stated that he was looking at pornography online in the fall of 2015 and on other occasions. Appellant stated that he was looking for adult pornography and used various search methods, one involving the use of a BitTorrent[4] program. Appellant described this program as one that would connect his computer to servers wherever they may be and download those files to his computer. Sometimes Appellant would use the "top downloads this week or month" search option and other times he would enter a particular search term into the program including "teen," "hot women," "young girls," "hussyfan," and "y-gold." Furthermore, Appellant admitted that he knew his searches had a "high potential" of downloading child pornography. Appellant's searches were saved to a folder within his Windows directory entitled "MUI," a location that would not be readily apparent to his wife and family members. Appellant indicated that many of the images he downloaded included individuals he estimated ranged from as young as 10 years of age to those in their early 20's. Sometimes, but not always, Appellant deleted the images after downloading and viewing them. Appellant asserted that he knowingly possessed digital images of minors engaged in sexually explicit conduct but not sexual acts. Finally, Appellant quantified the volume of child pornography he possessed to be in the "single digit percentile" of the overall pornography he possessed.

After the presentation of the defense sentencing case, the Government sought to admit additional rebuttal evidence pursuant to Mil.R.Evid. 404(b)—specifically the existence of a classified .pst email file. This was offered to rebut the evidence presented as to Appellant's efficacy as a commander while deployed. Without going into any details as to the nature of the classified materials, the evidence offered was that the .pst file was found on the laptop in

---

[4] An investigator later described the BitTorrent network as an automated system that allows users all over the network to share files. The advantage of the system is that it can get pieces of common files from different users which allows a faster download. The multi-source download is not useful for law enforcement because they would not know what piece of the file came from a specific user so they use a single-source download from the internet protocol (IP) address identified by BitTorrent as having accessed "files of interest" (generally contraband).

Appellant's home office, connected to a private network internet, which was not a proper means of classified storage.

## II. DISCUSSION

### A. Impact of Missing Prosecution Exhibit

#### 1. Additional Background

During the pre-sentencing phase of the trial, the military judge admitted PE 6, a digital video disk (DVD) containing the DCFL Report. Because the exhibit contained contraband, it was ordered sealed. A sanitized version of the document was included in the ROT as Appellate Exhibit (AE) XV. AE XV did not include the images of child pornography contained in the contraband version and certain lines of text that were not relevant to the charges before the court had been redacted.[5] The Government's forensic expert witness referred to AE XV throughout his direct examination.

The military judge also admitted, without objection, PE 7, an external hard drive containing 7,371 contraband images found on five of the devices seized from Appellant's home.

Additionally, the Government indicated they wanted to offer evidence of child erotica images found on devices seized from Appellant's home pursuant to Mil. R. Evid. 404(b). Their basis was that it rebutted the tenor of Appellant's guilty plea inquiry that the vast majority of the images and videos were not sought by Appellant or intentionally possessed. The Government forensic expert testified that he found "tens of thousands" of images of child erotica on Appellant's iphone, laptop, desktop, thumb drive, and the external hard drive found in Appellant's garage, mixed in with the child pornography on those devices. Additionally, the external hard drive found in Appellant's home office contained evidence of more than 19,715 deleted images of child erotica. The MUI folder on Appellant's desktop computer contained a folder titled "jailbait"—which the forensic expert testified was a "colloquial term that refers to girls who are under the age of 18, who are attractive and might be desirable, but if you were to actually engage in sex with them, it would send you to jail." Ultimately, the Government offered PE 9 containing nine "jailbait" images from Appellant's desktop. The Defense objected on the basis they were not relevant and Appellant had "already pled guilty to knowledge and possession of child pornography." The military judge overruled the objection, pointing out

---

[5] Some of the redacted text referred to evidence of child erotica found on five of the devices. The child erotica evidence would become relevant later during the sentencing phase of the trial.

that the Government was not bound by the Appellant's version of events to which he pled guilty.

The military judge authenticated the ROT on 3 May 2017, and the case was docketed with this court on 19 July 2017. Appellant filed his AOEs on 29 May 2018, asserting the ROT was incomplete due to the omission of PE 6. The Government's answer to the AOEs filed on 12 July 2018 asserts the ROT is substantially complete based on the content of PE 7, which contains all the contraband images relevant to Appellant's trial, and AE XV, which is the sanitized copy of the DCFL report.

The Government also filed three motions with this court on 12 July 2018: a Motion to Attach Document (Redacted); a Motion to Attach Document (Sensitive); and a Motion for Leave to File Attachment Under Seal. The attachments were a DVD and an affidavit from the lead trial counsel verifying the DVD contains the same report admitted at trial as PE 6.

Appellant's counsel filed a reply brief on 19 July 2018 asserting the DVD and affidavit are insufficient to substantially comply with the requirements of R.C.M. 1104(d). Additionally, counsel identified discrepancies with some of the file names found in PEs 6 and 7.

This court denied the motion to attach because the proffered matters did not comply with R.C.M. 1104(d). No further action was taken by the Government to reconstitute the record.

**2. Law**

The issue of whether a ROT is complete is a question of law that we review de novo. *United States v. Stoffer*, 53 M.J. 26, 27 (C.A.A.F. 2000). A ROT that is missing exhibits may be substantially incomplete. *Id.* (holding that the record was substantially incomplete for sentencing when all three defense sentencing exhibits were missing). However, "insubstantial" omissions from a ROT do not render the record incomplete. *See United States v. Henry*, 53 M.J. 108, 111 (C.A.A.F. 2000) (holding that four missing prosecution exhibits were insubstantial omissions when other exhibits of similar sexually explicit material were included). "Insubstantial omissions from a record of trial do not raise a presumption of prejudice or affect that record's characterization as a complete one." *Id.* "[A] substantial omission renders a record of trial incomplete and raises a presumption of prejudice that the government must rebut." *United States v. Harrow*, 62 M.J. 649, 654 (A.F. Ct. Crim. App. 2006) (citation omitted), *aff'd*, 65 M.J. 190 (C.A.A.F. 2007). We must approach the question of what constitutes a substantial omission on a case-by-case basis. *United States v. Abrams*, 50 M.J. 361, 363 (C.A.A.F. 1999).

### 3. Analysis

In *Stoffer*, the Court of Appeals for the Armed Forces (CAAF) concluded the absence of three defense exhibits was a substantial omission and did not approve the punitive discharge. 53 M.J. at 28. However, in accordance with *Abrams*, the holding in *Stoffer* must be limited to the facts of that case. *Stoffer* involved the introduction of three defense exhibits that were admitted without any further identification as to what the exhibits were or what was contained within them, and the exhibits were never referred to again after their introduction or otherwise identified in the ROT. 53 M.J. at 27. Holding that they could not "presume" what information was contained in the exhibits and finding the Government had failed to overcome the presumption of prejudice from the exhibits' absence in the ROT or show their omission to be harmless error, the court did not approve the bad-conduct discharge. *Id.* However, this case is distinguishable from *Stoffer* because the facts of the case at hand are substantially different. This case is more similar to *Henry* where the absence of prosecution exhibits was found insubstantial because other matters within the record contained similar material. *See Henry*, 53 M.J. at 111.

Here, the Government offered PE 6 (unredacted DCFL report containing 21 images) and PE 7 (removable hard drive with a total of 7,371 images of suspected child pornography found on five of Appellant's devices) simultaneously. Shortly thereafter, the Government provided AE XV, the sanitized DCFL report, which their forensic expert witness referred to throughout his lengthy testimony—78 pages of the total 306 pages of transcript in this case. The redacted report did not contain the images, but did contain the file names of the images that had been redacted from the report.

After a review of the entire ROT, we are confident that the missing exhibit is an insubstantial omission and the record is complete. Specifically, having reviewed the images contained on PE 7, the content of the sanitized DCFL report, and the verbatim transcript of both Appellant's guilty plea and the testimony of the Government's forensic expert witness, we find the record contains sufficient information regarding the results from the forensic analysis of Appellant's devices to allow us to fully perform our appellate review function pursuant to Article 66, UCMJ. Appellant did not refer to any specific image during his guilty plea, and the Charge did not refer to any image by name. Accordingly, we find any error in the omission of PE 6 in this case to be harmless.

## B. Sentence Severity

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We may affirm only so much of the sentence as we find correct in law and fact and determine should be approved on the basis of

the entire record. Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (alteration in original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam)). While we have great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 144–48 (C.A.A.F. 2010).

On appeal, Appellant relies on the same evidence and argument that he made at trial and in his clemency submission: that his conduct over a six-month span of time should not define his more than 30 years of service, and that the consequences of the dismissal are not warranted. The evidence established an elaborate and deliberate system by which Appellant obtained, organized, renamed and hid child pornography images. Appellant's efforts to minimize both the quantity and severity of the images he possessed is not supported by the evidence, and his assertion that the absence of distribution on his part amounts to mitigation is misplaced. Having given individualized consideration to Appellant, the nature and seriousness of the offense, Appellant's record of service, and all other matters contained in the ROT, we conclude that the sentence is not inappropriately severe.

## C. Denial of Continuance

Appellant asserts that the military judge's denial of the motion for a continuance denied Appellant's forensic computer expert sufficient time to examine the evidence, thereby resulting in inadequate preparation for trial. We disagree.

### 1. Additional Background

Charges were preferred on 29 June 2016 and referred to trial on 11 October 2016. On 21 October 2016, Appellant submitted a resignation for the Good of the Service and on 11 November 2016 requested to withdraw the resignation request and replace it with a Retirement in Lieu of Court-Martial (RILO).

On 4 November 2016, Appellant's trial defense counsel filed a request for appointment of an expert consultant in digital forensics. The request did not include travel prior to the trial. On 14 November 2016, Appellant filed a resignation in lieu of court-martial.[6] On 3 January 2017, the expert witness request

---

[6] In accordance with Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 8.15.3 (6 Jun. 2013), when a RILO has been submitted, a court-martial may not proceed beyond the acceptance of pleas at arraignment without permission to proceed.

was approved. On 23 January 2017, defense counsel filed a supplemental request for the expert to travel to Shaw AFB to review the contraband evidence.

On 30 January 2017, trial counsel, defense counsel, and the defense computer forensic expert scheduled logistics for the defense expert to review computer files at Shaw AFB. The defense expert offered the weeks of 20 February and 27 February as his availability, and the parties agreed on the week of 27 February. The trial on the merits was scheduled to begin on 13 March 2017.

On 13 February 2017, Appellant was arraigned, and Appellant deferred entry of his pleas and his forum selection. The trial court received briefs addressing a defense request for a Bill of Particulars, but otherwise the Defense raised no additional issues; specifically, the Defense did not ask for a continuance or otherwise raise a concern about the defense expert's ability to review the computer files.

On 17 February 2017, the Defense filed its motion for a continuance. On 23 February 2017, the Government received permission to proceed to trial while the RILO was pending. On 28 February 2017, defense counsel supplemented their motion asserting receipt of an additional 230 pages of discovery and alerted the military judge as to possible difficulties in contacting some government witnesses based on past experience in other trials. The Defense claimed the defense expert would not have enough time to prepare for trial. Although the presence of classified information on the contraband was known to the Defense, there was no reference to any restrictions for reviewing the devices due to classified information contained in either continuance motion.

The Government responded on 27 February 2017 and supplemented their response on 28 February 2017, informing the military judge that the date for reviewing the evidence was the defense expert witness's first availability and that nine witnesses, including civilians, and eleven Brigadier Generals and Colonels as potential panel members all had travel plans arranged for them to be at Shaw AFB for trial on 13 March 2017.

On 1 March 2017, the military judge denied defense counsel's motion for a continuance. On 6 March 2017, the Defense moved for reconsideration of the denial, asserting there was insufficient time for their expert to complete his analysis of the contraband (based in part on the *possibility* of technical issues) and indicating the choice of forum *may* change to judge alone. The Government opposed the motion, asserting the additional time the Defense now indicated they needed exceeded that originally requested, and that the Defense had not availed themselves of the Government's offer to approve additional funding. On 8 March 2017, the military judge issued his ruling on the request for reconsideration, delaying the trial for one day, but otherwise denying the motion.

The Defense raised no further motions for continuance. On 9 March 2017, Appellant's RILO was denied.

### 2. Law

We review a military judge's decision to deny a continuance for abuse of discretion. *United States v. Weisbeck*, 50 M.J. 461, 464 (C.A.A.F. 1999). A military judge has the authority, "for reasonable cause, [to] grant a continuance to any party for such time, and as often, as may appear to be just." Article 40, UCMJ, 10 U.S.C. § 840. "Reasonable cause" includes insufficient opportunity to prepare for trial. *See* R.C.M. 906(b)(1), Discussion. Whether or not to grant a continuance is a matter within the discretion of the military judge. *Id.* To warrant relief, an appellant must show prejudice as a result of the denial of a motion for continuance. *United States v. Wellington*, 58 M.J. 420, 425 (C.A.A.F. 2003).

In *United States v. Miller*, the CAAF identified 12 factors to consider when determining if denial of a motion for continuance is an abuse of discretion:

> surprise, nature of any evidence involved, timeliness of the request, substitute testimony or evidence, availability of witness or evidence requested, length of continuance, prejudice to opponent, moving party received prior continuances, good faith of moving party, use of reasonable diligence by moving party, possible impact on verdict, and prior notice.

47 M.J. 352, 358 (C.A.A.F. 1997) (citation omitted).

### 3. Analysis

The military judge's written ruling addressed the factors articulated in *Miller*. With regard to the three most relevant factors to Appellant's request—surprise, timeliness, and prejudice—the military judge found:

> a. Surprise: I do not find surprise to be a significant factor under the present facts. . . . [The] 229 pages of discovery . . . consists largely of a [sic] the NCMEC [National Center for Missing and Exploited Children] report and the finally published AFOSI report. . . . [T]he issues in this case will largely turn on the extent to which images found on various digital media constitute child pornography and whether the accused was in knowing possession of them. That being the case, the digital media themselves and the impressions of the respective experts as to how they came about will likely be of far more importance than the matters typically found in an AFOSI report.

> b. Timeliness of the request: While the length of time spent on the final approval of the expert request is disappointing to say

the least, neither party informed the Court of this difficulty or sought any intervention on my part during the approximately six weeks it was pending, when any concerns as to the request could have potentially been resolved without the necessity of a continuance. Additionally, no concerns were voiced as to the timing of the defense expert's review of the evidence in relation to the trial date. While the government bears significant responsibility for the relatively short time available to the defense to consult with their expert, that responsibility is largely negated by the defense's acquiescence with the dates provided and the failure of the defense to involve the court sooner.

. . . .

d. Prejudice to the opponent: . . . The defense has not demonstrated how they will be prejudiced by failure to continue the case. While they claim they are left with a mere 8 "duty days" until trial, they provide no basis for the implicit assumption that trial preparation cannot occur on weekends. Furthermore, there is no basis for concluding their expert will not be able to do precisely what he was employed to do, boil down the voluminous evidence into meaningful opinions and equip the defense to meaningfully confront the government expert, who incidentally has been available for the defense to interview for months.

AE VII, ¶16.

The military judge concluded the continuance was not required in the interests of justice and encouraged the Government to cooperate with the Defense regarding approval of additional on-site preparation by the expert witness in light of the classified material limitations. The military judge acknowledged the possibility of being compelled to reconsider his ruling. On reconsideration, the military judge indicated that the possibility of a judge alone election was too speculative and found no basis to speculate on technical issues impeding the analysis. If such issues arose, he anticipated having to reconsider the continuance yet again. Ultimately, the military judge found the Defense failed to show why the additional day of consultation would not be sufficient for them to adequately prepare.

Appellant asserted multiple ways in which he was prejudiced by the denial. We are not persuaded. Final arrangements for the defense expert to view the contraband material the week of 27 February (his preferred date) had been made two weeks before the 13 February 2017 arraignment, at which time the Defense made no mention of a need for a continuance, and in fact gave no indication to the military judge that there was any issue whatsoever regarding

their ability to prepare for trial. The continuance motion filed four days later relied on information that was known at the time of the arraignment. Furthermore, defense counsel were both aware of the presence of classified .pst files on at least one of the devices. The military defense counsel as well as the expert possessed the requisite clearance to view the files. Issuance of the "permission to proceed" memo cleared any potential impediments to the scheduled trial, making the expert's review of the evidence a very tight timeline—but one that could have and should have been expected based on the fact that the schedule was self-imposed. After the expert reviewed the evidence, there were no further requests for a continuance, and the defense counsel vigorously cross-examined the Government's expert in the sentencing phase. We agree with the military judge's assessment that the overall processing of the defense expert witness request was "disappointing," and while it did create a lag in trial preparation activities, it did not result in an inability to adequately prepare for trial. In the absence of demonstrated prejudice, we find no relief warranted.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court